Darlington Brick and Clay Products Company, Inc. *v.* Aino, Appellant.

Argued April 12, 1973. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, SPAULDING, CERCONE, and SPAETH, JJ.

*Paul R. Hirschfield,* for appellant.

*Gilbert E. Morcroft,* for appellee.

OPINION BY JACOBS, J., September 19, 1973:

The issue in this appeal is whether appellant entered into certain contracts as an individual or as an agent for a corporation. The lower court found the appellant personally liable, and we affirm.

This action was brought to recover the purchase price of certain bricks sold by appellee. The case was first tried before a board of arbitrators which found for appellee. On appeal, the case was tried before Judge Loran L. LEWIS without a jury who also found for the appellee. Appellant filed exceptions which were dismissed by a court en banc and judgment was entered for appellee in the amount of $1,346.33, with interest.

When a trial judge sits without a jury his findings of fact, confirmed by the court en banc, have the weight of a jury verdict and cannot be disturbed on appeal unless they lack sufficient and competent evidential support. *Wheatcroft v. Albert Co.,* 407 Pa. 97, 180 A.2d 216 (1962); *Bozitsko v. Hoffman,* 207 Pa. Superior Ct. 493, 218 A.2d 835, *allocatur refused,* 207 Pa. Superior Ct. xlvi (1966). In such case, the party favored by the finding is entitled to have the evidence viewed in the light most favorable to him and to have all conflicts in the testimony resolved in his favor. *Krobot v. Ganzak,* 194 Pa. Superior Ct. 49, 166 A.2d 311 (1960).

In defense of the action, appellant claimed that the sales contract was made with A.A. Homes, Inc., a corporation. After hearing the testimony the lower court

determined that appellant acted as an individual in purchasing the brick and not as an agent of the corporation.

In *Weimar v. Bockel*, 128 Pa. Superior Ct. 385, 194 A. 318 (1937), we were faced with a similar situation where the defendant claimed that he was not liable on a contract since he was acting as an agent for a corporation and not as an individual. There we stated that the issue of his personal liability was a "question of fact for the jury . . . ." *Id.* at 391, 194 A. at 321. We held that the evidence was sufficient to warrant the jury in finding that the defendant had made himself personally liable.

In the present case, if credibility and conflicts in the testimony are resolved in favor of the appellee, the evidence will support the following facts: Appellant himself ordered the bricks from appellee's sales manager and did not indicate he was ordering other than as an individual. Appellee's sales manager had known appellant for 16 or 17 years. He thought he was dealing with appellant as an individual and trusted him. Appellee's comptroller also testified that he thought appellant was dealing as an individual. Although appellant was billed as A.A. Homes (without corporate designation), appellee's manager and comptroller both believed that appellant and A.A. Homes were the same person.

On the basis of these facts, the lower court was justified in concluding that the sale was made to appellant as an individual and not as an agent for a corporation.

Judgment affirmed.

———

Dissenting Opinion by Spaeth, J.:

I cannot agree with the majority's conclusion that there is sufficient evidence to support a finding that

"the sale [by appellee] was made to appellant as an individual and not as an agent for a corporation."

"As a general principle, officers of a corporation are not liable for the corporate acts and debts of a corporation and are no more to be held liable for the debts or undertakings of the corporation than any other agent for the acts and debts of his principal. They are merely agents of the corporation: 7 R.C.L. §476, page 494; 14A C.J. §1949, page 170." *Weimer v. Bockel,* 128 Pa. Superior Ct. 385, 391-392, 194 A. 318, 321 (1937). In deciding whether this principle is applicable, " '[T]he presumption is that where one known to be an agent deals or contracts within the scope of his authority, credit is extended to the principal alone and the act or contract is his engagement as if he were personally present and acting or contracting. This presumption prevails in the absence of evidence that credit was given to the agent exclusively, the burden of proof being upon the party seeking to charge such agent exclusively.' " *Id.* at 392, 194 A. at 321, quoting 2 Am. Jur., Agency, §315, page 247.

In April and June of 1969, appellee-corporation, which identified itself on its invoices as "Darlington Brick & Clay Products Company, A Subsidiary of General Dynamics", sold three orders of bricks to "A-A Homes". The invoices for these orders have not been paid, and the only question at the trial was whether appellee, when it accepted and filled the orders, knew that "A-A Homes" was a corporation and dealt with appellant as an agent of the corporation.

There is no dispute that A-A Homes was a corporation and had been since 1947. The record includes a copy of its articles of incorporation, dated April 23, 1947, its certificate of incorporation, dated April 29, 1947, and its Pennsylvania Capital Stock, Loans and Corporate Net Income Tax Report for 1970; also, the

corporate minute books were identified and produced at the trial. From the articles of incorporation it appears that appellant was one of the original three shareholders and directors of the corporation, the other two shareholders and directors being appellant's wife and one Anthony Doria, who is unrelated to appellant. Appellee's contention that it did not know of this corporate existence but dealt with appellant as an individual will not withstand examination, no matter how favorably the evidence is regarded from appellee's point of view.

A considerable part of the evidence is documentary. Many of the documents were either prepared or processed by appellee. From these documents it appears that at least since 1967 appellee did business with appellant on a regular basis, and that these dealings were with appellant not as an individual but as an agent of a corporation. Thus: The record includes 25 invoices prepared and sent by appellee to appellant. The first of these invoices is dated April 10, 1967, and the last June 25 1969. Of these invoices, 16 were addressed and sent by appellee to "A-A Homes, Inc." and 9 to "A-A Homes". The 16 addressed and sent to "A-A Homes, Inc." extended from April 10, 1967, through February 28, 1968; of the 9 addressed and sent to "A-A Homes", five were in 1967, one was in 1968, and three were in 1969 (these three are the ones that are unpaid and on which the present suit was brought). All of these invoices (except for the three unpaid ones) were paid by check. The checks are also in the record and there were nine of them, the first dated May 15, 1967, and the last March 8, 1969. Each of the checks was drawn on the account of "A-A Homes, Inc., P. O. Box 7925, Pittsburgh, Pa. 15216", and each was received and endorsed by appellee. (All of the invoices, whether referring to "A-A Homes, Inc." or "A-A Homes", were also addressed to Box 7925.)

With respect to this documentary evidence, appellant testified that when he received the first invoice addressed to "A-A Homes", which was dated August 31, 1967, he called appellee and asked that the invoice be corrected from "A-A Homes" to "A-A Homes, Inc.". When asked why he did not also call to have later invoices similarly corrected, he replied, "Why, because I called before". This testimony was unrebutted. It is true that even so the testimony could have been disbelieved by the trial judge. However, appellant also testified that in response to his call regarding the August 31, 1967, invoice, appellee did send a corrected invoice, which is dated September 9, 1967, and was addressed to "A-A Homes, Inc.". This invoice was entered in evidence, and appellee never explained the change in address.

The only witnesses called by appellee were Bernard Haggerty, its general sales manager, and Wilbert L. Ritter, its comptroller. It will be convenient to consider these witnesses in reverse order.

Mr. Ritter testified that he became comptroller on January 10, 1969, and that "as of January the 1st, 1969", a ledger card was prepared for "A. A. Homes' account". He acknowledged that many of the invoices were addressed to "A-A Homes, Inc.", but said that "[t]he earlier ledger cards are back in the file", and that "I have no knowledge" whether these earlier cards referred to "A-A Homes, Inc". When his attention was called to the checks by which the invoices had been paid, the following ensued: "Q. I show you what's been identified as Defendant Exhibit D and ask you if you know what those are? A. Well, these are checks probably in payment, performance of these invoices. Q. Whose check is it please, sir (pointing)? A. The check is A. A. Homes, Incorporated. Q. And whose endorsement do you find on the backs of those checks? A. Darlington Clay Products. Q. On each one of them?

A. I assume so through the bank. Q. All right. Each one of these checks is paid by A. A. Homes, Inc., and endorsed by your company; is that correct? A. All right, they are paying for A. A. Homes' invoices also. Q. Are you saying that A. A. Homes and A. A. Homes, Inc., are two separate entities, sir? A. I'm saying I have no knowledge of A. A. Homes, Incorporated. Q. You have no personal knowledge but these are invoices of your company; isn't that correct? A. All right, fine. Q. Predating your employment with the Company? A. All right. Q. You are not saying the company didn't have any knowledge, you are saying— A. I am saying I had not, I was not interested in that portion. I am only interested in this portion.

. . .

Q. Sir, if you would see these invoices marked A. A. Homes, Inc., and A. A. Homes and these checks marked A. A. Homes, Inc., would you be, would you think at that point you may be dealing with a corporation? A. It would be my duty to check it if I had that knowledge, yes. Q. Fine, but you didn't assume your position until January of 1969? A. That's right."

Thus it is plain that Mr. Ritter's testimony in no way supported appellee's claim that it dealt with appellant as an individual and not as an agent for a corporation. Accepting the testimony at face value, at most it shows only that Mr. Ritter did not know that appellant was an agent of a corporation. However, Mr. Ritter's ignorance cannot serve as the basis of a finding that appellee was also ignorant; and particularly is this so when the only reason for Mr. Ritter's ignorance was because he ignored documents in appellee's own files that showed that appellee itself addressed invoices to, and received payment from, not appellant but the corporation, and therefore must have known that it was dealing with a corporation.

Mr. Haggerty testified that he had known appellant "[s]ixteen, seventeen years". When asked to whom he had "sold the brick", he replied, "Mr. Aino". Like Mr. Ritter, Mr. Haggerty testified that he "never heard of" A. A. Homes, Inc.; "[t]he only one I have heard of was the individual, Alex Aino". When asked if he "had faith in Aino", he replied, "Right". When his attention was called to the invoices, the following ensued: "Q. Will you just answer the question, then answer any way you want to. Does Alexander Aino's name appear anywhere on these invoices? A. No. Q. Do all these invoices represent all the brick that have been sold to A. A. Homes, Inc., or A. A. Homes over this period of time? A. He was trading under that name, yes. Q. Trading under what name? A. A. A. Homes. Q. Are you trying to say he's trading under the name of A. A. Homes and A. A. Homes, Inc.? A. It seems that way. Q. Do you know? A. No, but it has on here A. A. Homes and A. A. Homes, Incorporated. Here, take this with you, this is yours. (Marked for identification Defendant Exhibit A.)"

Appellant testified that at the job sites to which the bricks were delivered there were "[a]lways two signs that read 'A-A Homes, Inc.'" When asked about these signs, Mr. Haggerty testified as follows: "Q. I think you indicated at the arbitration hearing you saw signs at the job sites, 'A. A. Homes, Inc.'? A. Right. Q. You didn't pay any attention to those signs? A. No. Q. Why? A. You said on the job site. Only one job site. One, Greentree, nothing was ever put in the job. We are talking about at J. C. Drive. That was an individual job. Q. You saw a job with A. A. Homes, Inc.? A. On his plan. Q. Did you ever make this statement, Mr. Haggerty, at that arbitration hearing: 'I don't care who I was dealing with officially, A. A., Inc., or what. I relied on Aino to pay'.? A. I just about repeated that a few minutes ago, didn't I? Q. I just wanted to make

sure. A. My trust was in Alex Aino. He never told me about incorporation Homes or anything else."

It would seem that what Mr. Haggerty's testimony comes down to is a statement, not that he had never heard of the corporation, but that he had heard of it but paid no attention to it because he knew that the principal figure in the corporation was appellant, with whom he considered he was dealing. So regarded, Mr. Haggerty's testimony is of even less assistance to appellee than Mr. Ritter's. However, no matter how Mr. Haggerty's testimony is regarded, and accepting at face value his statement that he had never heard of the corporation, still the testimony is insufficient to support a recovery against appellant, for it only proved Mr. Haggerty's ignorance, not appellee's; and proof of Mr. Haggerty's ignorance could not contradict, any more than proof of Mr. Ritter's ignorance could contradict, the documentary evidence that appellee knew that it was dealing with a corporation.

In *Weimer v. Bockel, supra,* the plaintiffs were two lawyers, who were partners, and the defendant was J. R. Bockel, who owned 85 percent of the stock of Majestic Coal Company. At Bockel's request, plaintiff brought suit on behalf of the coal company, and recovered in settlement some $17,000. When they billed Bockel for legal services, he refused to pay, claiming that the coal company should pay. The jury found for the plaintiffs, and on review, this court affirmed. Two facts were regarded by the court as critical. First, Bockel had told the plaintiffs, who knew, and readily admitted knowing, of the coal company, that he was retaining them not on behalf of the company but personally, *e.g.,* "wants us to look after his interests". *Weimer v. Bockel, supra* at 390, 194 A. at 320. And second, the settlement check of some $17,000 was deposited to the account of "J. R. Bockel, Special", and the proceeds were used, among other purposes, to buy

bonds that were deposited in a trust fund created by Bockel. *Id.* at 391, 194 A. at 321. In the present case neither Mr. Haggerty nor Mr. Ritter testified that appellant ever said that he was acting not on behalf of the corporation but for himself; the only payments made were from an account identified as a corporate account; and such communications as did occur—appellee's invoices and the checks in payment—were between appellee as one corporation and A. A. Homes, Inc., as another.

The law entitles even sole proprietors to incorporate. Appellant's reliance on the benefits that accrue from incorporation should not be set aside on the basis of evidence such as appellee's evidence, which even accepted at face value is no more than self-serving and conclusory statements contradicted by the documentary proof. "The corporate entity or personality will be disregarded only when the entity is used to defeat public convenience, justify wrong, protect fraud or defend crime". *Sams v. Redevelopment Authority,* 431 Pa. 240, 244, 244 A. 2d 779, 781 (1968). There is neither evidence nor argument that there was any such use here.

The verdict of the court below should be reversed.

HOFFMAN, J., joins in this dissenting opinion.