449 A.2d 658

**Franklin W. JUDGE, Appellant,**

v.

**CELINA MUTUAL INSURANCE COMPANY.**

**Franklin W. JUDGE**

v.

**CELINA MUTUAL INSURANCE COMPANY, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 4, 1981.

Filed Aug. 13, 1982.

Petition for Allowance of Appeal
Denied Dec. 28, 1982.

222

Edwin Krawitz, East Stroudsburg, for Judge, appellant (at No. 502) and appellee (at No. 503).

Bernard M. Billick, Stroudsburg, for Celina, appellant (at No. 503) and appellee (at No. 502).

Before BROSKY, POPOVICH and MONTGOMERY, JJ.

BROSKY, Judge:

This appeal arises out of a suit filed by Franklin W. Judge against his insurance company, Celina Mutual Insurance Company (Insurance Company), concerning the Insurance Company's liability to Judge under an insurance policy purchased by Judge to protect himself from loss due to fire on property he owned in Stroudsburg, Pennsylvania. The lower court entered a verdict in favor of Judge in the amount of $23,500. Judge filed exceptions claiming that the damages awarded were too small. The trial court, sitting en banc, dismissed the exceptions. This appeal followed in which Judge complains that the damages awarded were inadequate. The Insurance Company has filed also an appeal in which it asserts that Judge should have been precluded from recovery because he failed to file a proof of loss form according to the policy's requirements, that he failed to adequately protect the damaged property, that Judge's expert witness was not qualified, and that the Insurance Company should have been permitted to offset damages through a defense of salvage value. We reverse and remand in the Judge's appeal and affirm in the Insurance Company's appeal.

Judge was a tenant in a building which was completely destroyed by fire on November 27, 1977. Judge owned a restaurant in the building where he sold pizza. The restaurant was operated by Ronald Joachim, Judge's brother-in-law, from whom Judge purchased the business and equipment in 1977 for $45,000. Judge was a full-time bus driver in New York City, New York at the time of the fire. Judge became aware of the fire shortly after it occurred. He notified the Insurance Company immediately thereafter.

The Insurance Company then engaged an adjuster, Claude Martin Company, to adjust the loss. Judge and Joachim contacted William Dagger, an employee of Claude Martin Company. Dagger eventually gave Judge an inventory form and requested him to prepare an inventory of the damages and to return the form to him. Dagger told Judge that he would not hold him to the 60-day limitation in the policy for filing a proof of loss form. Judge mailed the form to Dagger on February 7, 1978.[1]

Dagger visited the burned-out building three days after the fire occurred and on eleven subsequent occasions. The trial court reviewed the evidence produced by the parties and determined that the insured property was a total loss. The Insurance Company never submitted any evidence about the salvage value, if any, of the property. Judge presented evidence as to the value of his lost property in the form of testimony of Ronald Joachim. Joachim was shown to be familiar with the pizza-selling business. He was shown to be schooled in the value of pizza making equipment. He was very familiar with this business, having formerly owned it and being the current operator.

The record indicates that the property was boarded up from the date of the fire until March or April of 1978. There is no evidence of any pilferage or vandalism occurring on the property. As we stated, Dagger was able to inspect the damage on twelve occasions. He never testified that the property was not secured properly.

■ The record reveals that the original cost of the equipment used in the business was $23,692.04. Judge testified that of the $45,000 purchase price that $25,000 was allocated to the purchase of the equipment. Joachim testified that

1. It is not clear in the record whether and when the Insurance Company received the inventory form from Judge. The trial court held that it was mailed. We see no reason to disturb this finding. We must, therefore, presume it was received. *Berkowitz v. Mayflower Securities, Inc.*, 455 Pa. 531, 317 A.2d 584 (1974). The Insurance Company's mere denial of receipt is insufficient to refute the presumption. The record is clear that Judge's attorney, Edwin Krawitz, mailed a copy of the inventory to Dagger on February 22, 1978, which was received.

the value of the equipment had appreciated, raising its current value to $33,073. Judge also stated that the value of supplies lost in the fire was $3,500. Joachim testified further that when he sold the business to Judge he had expended $8,000 on improvements on the property. Judge, who was the tenant at the time of the fire, had not made any further improvements, but presumably the cost of these improvements was included in the $45,000 purchase price he had paid Joachim.[2] The lower court held that as the policy only covered improvements made by the tenant, that Judge was not covered for the $8,000 in improvements. The court decided that the "actual cash value" of the equipment was $20,000. It awarded damages of $23,500. The value of the lost equipment and lost supplies.

■ The Insurance Company asserts that Judge should be barred from recovery because of his failure to file a proof of loss form within 60 days of the fire. In *Brakeman v. Potomac Insurance Co.*, 472 Pa. 66, 371 A.2d 193 (1977), our Supreme Court held that a delay in notification of loss will be excused if there has not been a lack of due diligence. The court also required that the Insurance Company prove that it was prejudiced by the delay if it is to be relieved of liability. While we believe this principle is applicable to the failure of Judge to file a proof of loss statement within 60 days, the Insurance Company, clearly, has not been prejudiced. It had ample opportunity to inspect the burned building. It was told that the loss was total and Judge provided it with a statement of what equipment was in the building, mailed within 72 days.

■ Next, the Insurance Company claims that the property was not adequately secured after the fire. This contention is not supported by the record. The building was locked and boarded up for six to seven months after the fire. The

---

**2.** We are satisfied that Joachim was qualified to testify as to the value of the equipment. While Joachim was not the current owner of the equipment, he was the former owner and current operator of the restaurant. We are satisfied that Joachim was competent to testify as to the value of the equipment. See: *Commonwealth v. Warlow*, 237 Pa.Super. 120, 346 A.2d 826 (1975).

insured is only required to secure the insured premises for a reasonable length of time so that the insurer can check them. The insured is not obliged to secure the property for an indefinite period of time. Obviously, in the instant case, the insured property was secured for a reasonable length of time. The insurer's adjuster was able to inspect the premises twelve times. The record gives no indication that the property was not secure for a reasonable period of time. Cf.: *Isaac et al. v. Donegal and Conoy Mutual Fire Insurance Company*, 308 Pa. 439, 162 A. 300 (1932).

■ The Insurance Company claims that it should have been able to avoid liability at least in part because of the salvage value of the property. The defense of salvage value arises from the insurance contract and, as such, is an affirmative defense which must be properly pleaded in new matter. *Matthews v. Malloy*, 217 Pa.Super. 338, 272 A.2d 226 (1970). An affirmative defense not properly pleaded is waived. Pa.R.C.P. 1030. The Insurance Company has waived this contention.

■ Judge asserts that the damages assessed in this case are incorrect. He claims he should be permitted significantly higher damages. The trial court stated in its opinion that:

The plaintiff's testimony is that the supplies destroyed by the fire were valued at $3,500. This testimony is not disputed and we have no basis on which to reject this figure. It does not appear to be unreasonable. We know that the bulk of the insured property when new, cost $23,692.04 and that it was five years old. We further know that some eleven months before the fire the Plaintiff testified that he paid $25,000.00 for it, which price included some additional equipment which Joachim purchased after he bought the pizza restaurant from Pappas. We further are aware that at the time of the fire second hand equipment had, due to inflation, a strong market at high prices. We further are aware that the Appellate Courts have often stated that the actual cash value of the insured property is the measure of damage and not its

market value. It is our considered judgment and so we find that the actual cash value of the destroyed property, exclusive of supplies, was $20,000.

(Trial Court Opinion pages 14–15.)

The trial court's understanding of the term "actual cash value" is not correct. In *Commercial Union Assurance Co. v. Pucci*, 523 F.Supp. 1310, 1319 (W.D.Pa.1981), the court stated:

> The policy that Commercial Union issued to the Puccis read in pertinent part that "this Company's liability for loss . . . shall not exceed . . . the actual cash value of that part of the building structure damaged or destroyed." Def.Exh.C. The Pennsylvania Supreme Court has stated that "[a]ctual cash value in a policy of insurance means what it would cost to replace a building or a chattel as of the date of the fire." *Fedas v. Insurance Company of Pennsylvania*, 300 Pa. 555, 562, 151 A. 285, 288 (1930). We have found no Pennsylvania case that conflicts with the law as stated in *Fedas* or that calculates the cost of repair as of the date of the judicial award rather than as of the date of the loss.

Our Supreme Court in *Fedas v. Insurance Company of Pennsylvania*, 300 Pa. 555, 151 A. 285 (1930), discussed the difference between market value and actual cash value. It said:

> Generally speaking, "actual cash value" does not mean market value as the term is understood. "Market value," as here urged embodies what a purchaser willing to buy feels justified in paying for property which one is willing but not required to sell. "Market value" includes factors of time, place, circumstance, use, and benefit; depreciation is included, but one figure is the result of these considerations, the price to be paid, ordinarily actual cash value has no relation to any of these factors; it is value under all times, such as the cost of manufacturing or building or book value. The policy intended something different from market value; the latter includes "depreciation," while the "actual cash value" of the policy is to be

diminished by "depreciation." Actual cash value in a policy of insurance means what it would cost to replace a building or chattel as of the date of the fire.

■ The insurance policy in the instant case provides that the Insurance Company will be liable for the "actual cash value" of property damaged by fire. We are obliged to reverse and remand the order of the trial court as to the amount of damages. The trial court failed to determine the liability of the Insurance Company in accordance with our Supreme Court's decision in *Fedas*.[3]

Order reversed in part and remanded for proceedings consistent with this opinion, and affirmed in part.

MONTGOMERY, J., files concurring and dissenting opinion.

MONTGOMERY, Judge, concurring and dissenting:

I must respectfully dissent as to the order for a new trial. I find no basis in the record for the holding by my Brethren that the trial court committed error in its findings and verdict with respect to damages. It is asserted in the Majority Opinion that the lower court misunderstood the term "actual cash value". The record clearly refutes such a conclusion.

The lower court cited and correctly explained *Fedas v. Insurance Company of Pennsylvania*, 300 Pa. 555, 151 A. 285 (1930), which is the lead case in our Commonwealth defining what is meant by "actual cash value". The lower court recognized the distinction between "market value" and "ac-

3. Judge complains that the Insurance Company was liable for $18,000 in improvements made by Joachim. The insurance policy specifically provides that the insurer is only liable for improvement and betterments made by the "*tenant.*" Judge did not make the improvements. Thus, he is excluded from coverage. Judge does not argue in his appeal that the exclusion was not explained to him. *Kelmo Enterprises v. Commercial Union Ins.*, 285 Pa.Super. 13, 426 A.2d 680 (1981). Accordingly, we do not consider this issue. On remand, the trial court shall not include these alleged damages in its award.

tual cash value" enunciated by our Supreme Court in that case.[1]

Of course the lower court, sitting without a jury, is given quite broad discretion in fixing damages in a case such as this.[2] I can find no abuse of that discretion in the award of damages in the amount of $23,500.00. The amount of that verdict seems fair and reasonable in light of the evidence presented and I believe that no ground exists for disturbing it on this appeal.

I note my agreement with my Brethren in the Majority that there is no merit in any of the remaining contentions offered by either of the parties in their separate appeals in this case. However, I must dissent as to the order for a new trial. I would affirm the order of the lower court.

[1]. This distinction was recently reiterated by the Federal District Court in *Commercial Union Assurance Co. v. Pucci*, 523 F.Supp. 1310 (W.D.Pa.1981).

[2]. The trial court's findings, which were approved by the court en banc, carry the same weight as a jury verdict. *Darlington Brick and Clay Products Co. v. Aino*, 225 Pa.Super. 186, 187, 310 A.2d 401, 402 (1973).