**Latimore Township-York Springs**
**Regional Police Commission v.**
**EMC Insurance Companies**

470

C.P. of Adams County, no. 04-S-15.

*James G. Gault,* for plaintiff.
*Anthony R. Sherr,* for defendant.

GEORGE, *J.*, December 22, 2004—

## FINDINGS OF FACT

The Latimore Township-York Springs Regional Police Commission initiated this matter by filing an action for declaratory judgment asking the court to declare that EMC Insurance Companies is liable to indemnify Latimore Township pursuant to a municipal liability insurance policy. Latimore Township is seeking indemnification from EMC for approximately $31,137, which Latimore Township paid the former Latimore Township chief of police pursuant to the Pennsylvania Heart and Lung Act, 53 P.S. §637. After a non-jury trial, the court makes the following findings of fact:

(1) Latimore Township-York Springs Regional Police Commission is a municipal police commission with its principal place of business in York Springs, Adams County, Pennsylvania.

(2) Employers Mutual Casualty Insurance Company is a corporation licensed to do business and underwrite certain insurance policies in the Commonwealth of Pennsylvania with a local office at 1620 Medical Drive, Pottstown, Montgomery County, Pennsylvania.

(3) Sometime prior to September 1999, EMC issued a municipal liability insurance policy to Latimore Township. The material terms of that policy are accurately set forth in EMC's exhibit no. 1.

(4) George C. Bowers was employed by York Springs Regional Police Department from 1978 to September 29, 1999, as a police officer, and subsequently, as police chief.

(5) On September 29, 1999, Chief Bowers underwent open-heart surgery at the Harrisburg Hospital.

(6) Following his open-heart surgery, Chief Bowers was temporarily disabled until June 2000, when he returned to work with the York Springs Regional Police Department.

(7) Chief Bowers has worked in a highly stressful environment for over 20 years. Throughout his employment as a police officer with Latimore Township, Chief Bowers investigated fatal motor vehicle accidents, conducted or led suicide and homicide death investigations, was involved in high-speed vehicle pursuits, responded to domestic violence incidents, and conducted missing persons investigations. One particular missing person investigation conducted by Chief Bowers resulted in Chief Bowers' discovery of a two-year-old child's deceased body. During his tenure as a police officer, Chief Bowers was personally involved in a two- to three-hour negotiation with a woman holding a firearm threatening to shoot herself. Chief Bowers has undergone psychotherapy for frequently recurring nightmares related to the death investigations in which he was involved.

(8) Toward the end of Chief Bowers' employment with Latimore Township, and prior to the heart surgery, Chief Bowers would experience chest pains during intense incidents arising during the course of his employment.

(9) There is no evidence to indicate that, during his employment with the York Springs Police Department, Chief Bowers suffered a heart attack.

(10) Dr. H. Frederick Martin is licensed to practice medicine in the State of Pennsylvania and has been board certified in family practice since 1983. He is a member of the American Board of Family Practice and the Adams

County Medical Society. He has operated a family practice for 21 years. During his years in practice, he has treated patients with heart disease, cardiac injuries, high blood pressure, diabetes, and cholesterol issues.

(11) Dr. Martin treated Chief Bowers as a patient since 1997. In assessing Chief Bowers' medical history, he determined that Chief Bowers has a family history of premature cardiovascular disease, moderately high blood pressure, elevated levels of cholesterol, heavy tobacco use, a sedentary lifestyle, and a history of hyperlipidemia.[1]

(12) Each of the conditions referred to above in regard to Chief Bowers' medical history is classified as a risk factor for the development of coronary disease according to a publication issued by the American Heart Association and the American College of Cardiology.

(13) There is a lack of consensus in the medical community concerning the cause of coronary artery disease. There are, however, certain things that have been statistically proven to accelerate the development of coronary artery disease; this list includes the risk factors mentioned above. There are two trains of thought in the medical community as to whether a relationship exists between coronary heart disease and life stressors.

(14) In Dr. Martin's opinion, which the court accepts as credible, the stress of being a police officer was a sub-

---

1. Hyperlipidemia means an excess of lipids in one's plasma characterized by an increase in both cholesterol and triglycerides in the bloodstream. See generally, Mosby's Medical Dictionary, 6th Edition.

stantial factor in causing the heart disease suffered by Chief Bowers.

(15) At a public meeting conducted on October 13, 1999, the board of supervisors of Latimore Township unanimously approved a motion authorizing the payment of heart and lung benefits to Chief Bowers effective October 16, 1999. Act of 1935, P.L. 477 (53 P.S. §637). Thereafter, Latimore Township issued regular bi-weekly payments of heart and lung benefits to Chief Bowers until his temporary disability ceased on or about January 5, 2001.

(16) Latimore Township paid Chief Bowers a total of $31,137.

## OPINION

The initial issue with which the court is confronted originates from the procedural posture of this case. One would anticipate that a typical claim under the Heart and Lung Act, 53 P.S. §637,[2] would trigger a fact-finding hearing where due process is afforded.[3] Following such a procedure, an aggrieved party is afforded an opportunity to appeal an adverse decision. See generally, 2

---

2. The Heart and Lung Act provides benefits to state and local law enforcement officers who are temporarily incapacitated from performing their duties as a result of injuries that occurred in the performance of duties. This Act also provides benefits where a state or local law enforcement officer suffers from diseases of the heart or tuberculosis of the respiratory system when the condition arose directly out of his or her employment.

3. In *Wydra v. Swatara Township,* 136 Pa. Commw. 164, 173, 582 A.2d 710, 714 (1990), the court held that the receipt of Heart and Lung Act benefits is a property right subject to due process protection.

Pa.C.S. §551 et seq. (relating to practice and procedure of local agencies).[4]

Instantly, this matter comes before the court as a declaratory judgment action seeking to interpret the terms of an insurance contract. Latimore Township seeks indemnification for heart and lung benefits which it has apparently voluntarily agreed to pay Chief Bowers pursuant to an ordinance passed at a public meeting held on October 13, 1999. The court has not been provided with a transcript of this public meeting nor is there any indication that a fact-finding hearing occurred. Additionally, the record is absent regarding any information that indicates whether EMC was aware of Chief Bowers' claim under the Heart and Lung Act prior to October 13, 2004, or whether EMC had an opportunity to participate in determining whether benefits were appropriate.[5] On the

4. The Heart and Lung Act does not specify a means by which a dispute under the Act should be resolved. However, review of the cases which have reached the appellate courts reveal procedural histories wherein a fact-finding hearing was conducted by the local agency. See generally, *Kohut v. W.C.A.B. (Township of Forward),* 153 Pa. Commw. 382, 621 A.2d 1101 (1993); *Gilotty v. Township of Moon,* 846 A.2d 195 (Pa. Commw. 2004).

5. The liability coverage form under the municipal liability insurance policy at issue indicates that EMC has the *right* and duty to defend any "suits seeking [heart and lung] damages." In another part of the insurance policy titled "duties in the event of occurrence, claim or suit," the policy provides that no insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first-aid, without our consent. EMC's exhibit no. 1, page 2, paragraph 4(d). Neither party has raised lack of compliance with this section as an issue; specifically, Latimore Township's failure to perform a condition precedent pursuant to this paragraph was not alleged in new matter nor raised at trial. As such, the issue is waived; I will not create an issue not raised by the parties. See Pa.R.C.P. 1032 (waiver of defenses); see also, *Judge v. Celina Mutual Insur-*

basis of this sparse record, Latimore Township argues that EMC is contractually precluded from challenging the propriety of benefits paid to Chief Bowers under the Heart and Lung Act. Additionally, they argue that EMC is contractually obligated to indemnify Latimore Township since Latimore Township became legally obligated to pay Chief Bowers' heart and lung benefits as a result of the ordinance passed on October 13, 1999. I agree.

Whether EMC participated in the public hearing on October 13, 1999, is immaterial in light of the current procedural posture of this matter. Chief Bowers filed a claim for heart and lung benefits against Latimore Township. EMC, as the township's insurance carrier, is subject to the same liabilities as Latimore Township, including the liability that arose from Bowers' claim. See *Kohut v. W.C.A.B. (Township of Forward)*, 153 Pa. Commw. 382, 389-90, 621 A.2d 1101, 1104 (1993). At the public hearing on October 13, 1999, Latimore Township incurred liability through the passage of their ordinance. Although some may conclude that the court's interpretation of the contractual language is unfair because the interpretation resulted in EMC relinquishing control of their financial resources to Latimore Township, this conclusion is incorrect. The insurance contract at issue provides certain remedies to the carrier in the event that an insured triggers coverage without the participation of the insurer. EMC has not challenged its liability on that basis. Accordingly, the legal obligation that Latimore Township has incurred is sufficient to trigger policy coverage.

---

*ance Co.,* 303 Pa. Super. 221, 226, 449 A.2d 658, 661 (1982) (noting that affirmative defense not properly pleaded is waived).

In reaching this conclusion, I note that Latimore Township's determination as to Chief Bowers' eligibility for benefits under the Heart and Lung Act was reasonable. In interpreting the applicability of benefits under the Heart and Lung Act, there is a presumption that heart disease is work-related if a police officer has worked for four consecutive years in that position. *Benginia v. W.C.A.B. (City of Scranton),* 805 A.2d 1272, 1277 (Pa. Commw. 2002). As such, the initial burden is on the employer to prove that a claimant's heart attack was not the result of stress or danger encountered while employed as a police officer. *Buchanan v. Pennsylvania State Police,* 152 Pa. Commw. 608, 614, 620 A.2d 575, 577 (1993). Although this presumption does not relieve a claimant from establishing that his heart disease was work-related, this court has found Chief Bowers' family physician's testimony credible, wherein he stated that the rigors of Chief Bowers' employment was a substantial cause of his heart disease. Thus, Latimore Township's decision to grant benefits under the Heart and Lung Act to Chief Bowers was not an abuse of discretion.

EMC argues that in addition to the necessity of a legal obligation by Latimore Township under the Heart and Lung Act, the policy terms limit the recovery of benefits to only those for "injuries or illnesses suffered by [the claimant] in the performance of their duties." EMC's exhibit no. 1, page 1, section 1—coverage.[6] EMC argues

---

6. Material language of the policy at issue provides: "We will pay those sums that you become legally obligated to pay to any paid policeman, paid fireman or paid park guards under the provisions of the

that this language is unambiguous and that the policy does not provide coverage to all benefits paid under the Heart and Lung Act but rather only for benefits paid for injuries or illnesses occurring in the officer's performance of his duties. Indeed, Pennsylvania's Heart and Lung Act provides for benefits under two distinct scenarios. Under subsection (a) of the Act, a police officer may receive benefits if he is "injured in the performance of his duties and, as a result, temporarily incapacitated from performing future duties . . . ." 53 P.S. §637(a). On the other hand, subsection (b) triggers the legal presumptions set forth hereinabove and allows benefit coverage for diseases "arising directly out of employment." 53 P.S. §637(b). Based upon this distinction in coverage, EMC argues that the limiting language of the policy provides coverage for claims under subsection (a), however, does not include coverage for those claims, such as Chief Bowers', arising under subsection (b).

The interpretation of an insurance contract, regarding the existence or nonexistence of coverage, is "generally performed by the court." *General Accident Insurance Co. of America v. Allen,* 547 Pa. 693, 701, 692 A.2d 1089, 1093 (1997). "Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer . . . [w]here, however, the language of the contract is clear and unambiguous, a court is required to give effect to that language." *Minnesota Fire and Casualty Co. v. Greenfield,* 2004 Pa. Lexis, 15, 855 A.2d 854, 861 (2004) (quoting *Gene & Harvey*

---

Act of 1935, P.L. 477, as amended, because of temporary incapacity as a result of injuries or illnesses suffered by them in the performance of their duties."

*Builders Inc. v. Pennsylvania Manufacturers' Association Insurance Co.*, 512 Pa. 420, 426, 517 A.2d 910, 913 (1986). "A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Kripp v. Kripp,* 578 Pa. 82, 91, 849 A.2d 1159, 1163 (2004).

While it is true that the language "in the performance of their duties" mirrors the language of subsection (a) of the Heart and Lung Act, the question of whether the language in the policy is ambiguous requires future discussion. Interestingly, the language in the policy provides coverage for both "injuries" and "illnesses." Although subsection (a) of the Heart and Lung Act clearly refers to "injuries," it does not contain any reference to "illnesses." Rather, the only language in the Heart and Lung Act that can conceivably be interpreted as providing benefits for "illnesses" is the language found in subsection (b), which provides coverage for "diseases."[7] Thus, contrary to EMC's argument, it appears that the policy coverage is broader than providing coverage only under benefits paid under subsection (a). To hold otherwise would be to disregard the use of "illnesses" in the policy language since "illnesses" do not fall in subsection (a) of the Heart and Lung Act.

In light of the foregoing, it appears that the policy is ambiguous as to the coverage to the township for benefits paid under the Act. At the very least, the policy lan-

---

7. The dictionary reveals that the word "disease" is synonymous with "illness." Both the American Heritage Dictionary and the 11th Edition of Merriam-Webster's Dictionary equate "disease" and "illness" with "sickness." On the other hand, both dictionaries define "injury" as a "hurt, damage, or loss."

guage is susceptible to different interpretations. Therefore, this language shall be interpreted in favor of Latimore Township as providing coverage for any claims that Latimore Township is legally obligated to pay under the provisions of Pennsylvania's Heart and Lung Act.

Having found that EMC must indemnify Latimore Township pursuant to its municipal liability insurance policy, I now turn to Latimore Township's request for legal fees. In *Kelmo Enterprises Inc. v. Commerical Union Insurance Co.,* 285 Pa. Super. 13, 21-23, 426 A.2d 680, 684-85 (1981) (petition for allowance of appeal granted May 6, 1981), the Pennsylvania Superior Court recognized that legal fees may be appropriate in a declaratory judgment action based upon the breach of an insurance contract. In recognizing that the imposition of legal fees is appropriate, the Superior Court required a showing of bad faith on the part of the insurance carrier. The record before the court is void of any evidence indicating bad faith on the part of EMC. Apparently, Latimore Township seeks to rely upon a mere showing of breach of the insurance contract as justification for an award of attorney fees. This minimal threshold was expressly rejected in *Kelmo*. As such, it will likewise be rejected in the instant case.

For the foregoing reasons the attached order is entered.

## ORDER

And now, December 22, 2004, EMC Insurance Companies is directed to indemnify Latimore Township-York Springs Regional Police Commission $31,137 pursuant to the municipal liability insurance policy at issue in this matter. The costs are to be paid by the defendant.