J. A29010/15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ACT DEALERSHIPS, INC., | : | IN THE SUPERIOR COURT OF |
| D/B/A ANDRETTI AIRPORT TOYOTA, | : | PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | No. 1862 WDA 2014 |
| D.A. McLAREN, L.P. AND | : | |
| THEODORE A. McWILLIAMS | : | |

Appeal from the Order Entered October 15, 2014,
in the Court of Common Pleas of Allegheny County
Civil Division at No. GD-07-15208

BEFORE:  FORD ELLIOTT, P.J.E., BOWES AND MUSMANNO, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:      **FILED FEBRUARY 26, 2016**

ACT Dealerships, Inc., d/b/a Andretti Airport Toyota ("ACT"), appeals from the order entered October 15, 2014, granting summary judgment for defendants/appellees and dismissing the case.  In this breach of contract action, ACT, a lessee of two separate properties at 798-800 Narrows Run Road, claimed that appellees violated their obligations under the respective leases to properly maintain the roofs, resulting in damages to ACT when it sold its car dealership to a third party.  According to ACT, appellees' failure to repair/replace the roofs forced ACT to sell its business at a discount.  The Honorable Timothy P. O'Reilly found that, with respect to appellee Theodore A. McWilliams ("McWilliams"), lessor of 800 Narrows Run Road, ACT failed to prove any violation of the lease agreement.  With respect to

appellee D.A. McLaren, L.P. ("McLaren"), lessor of 798 Narrows Run Road, the trial court found that ACT failed to prove causation and damages. After careful review, we agree and, therefore, affirm.

On January 6, 2012, the trial court granted appellees' first motion for summary judgment, which related to Count I of ACT's complaint and 800 Narrows Run Road (McWilliams). On October 15, 2014, the trial court granted appellees' second motion for summary judgment, which related to Count II of the complaint and 798 Narrows Run Road (McLaren). In these two opinions, the trial court has summarized the history of this matter as follows:

> This Motion for Summary Judgment on the Pleadings as characterized by the Plaintiff ACT Dealership, Inc., d/b/a Andretti Airport Toyota (ACT), involves the assertion by ACT that the roofs on 2 buildings on 2 parcels of land - 798 Narrows Run Road and 800 Narrows Run Road were defective and must be repaired by the lessors of those properties, Defendant, D. A. McLaren (McLaren) as to 798 Narrows Run Road and Defendant Theodore A. McWilliams (McWilliams) as to 800 Narrows Run Road.
>
> On analysis, however, the case is more complicated than the above recital would indicate.
>
> ACT operated a car dealership at both locations but in 2006 sought to sell that dealership. In the course of attempting to sell the dealership, a prospective purchaser had the buildings inspected - that is at both 798 and 800 Narrows Run Road. That inspector opined that the roofs on both properties were in such a state of disrepair so as to require replacement.

ACT, relying on the leases it had with McWilliams and McLaren, requested those lessors to replace the roof. They did not do so.

ACT proceeded with the sale of the dealership but avers it had to reduce the price sought because of the deteriorating roofs. It attributes that reduction in price to the failure by McWilliams and McLaren to repair the roofs and seeks payment by them for the reduction in price.

Defendant McWilliams has countered that Motion with its own Motion for Partial Summary Judgment as to Count I only of the Complaint pertaining to 800 Narrows Run Road. The argument as to Count I is that even if the lease required McWilliams to replace the roof <u>or</u> reimburse ACT, that obligation arises <u>only</u> <u>if</u> ACT itself had paid to have the roof replaced. Since it did not and only reduced its selling price, it cannot receive any money under its theory in Count I. McWilliams relies on Section 12.9 of the lease for this proposition.

Defendants also assert that ACT sold the dealership in 2007 to an entity known as KRT and that KRT has not replaced the roof.

The lease language at Section 12.9 relied on by ACT requires the lessors to "keep and maintain the foundations, support walls and other structural portions of the premises in good order and condition." If the lessors fail to abide by the aforesaid obligation, and fail to ". . . make repairs or replacements required under this Section 12.9, Tenant may make same and collect the costs thereof and expenses incurred in connection therewith . . ."

Trial court opinion, 1/6/12 at 1-2 (emphasis in original). The trial court determined that even assuming, *arguendo*, that Section 12.9 applies to the roof, ACT failed to repair or replace the roof; in fact, it was never replaced. (*Id.* at 2-3.) Section 12.9 only provides for reimbursement to the lessee in

the event the lessor, after reasonable notice, fails to repair/replace the roof. (***Id.***)  Therefore, the trial court ruled that ACT could not recover on Count 1 of the complaint against McWilliams.  With respect to McLaren, the trial court stated:

> McLaren owned a building which it leased to ACT for its auto dealership.  ACT contended that the roof was in need of repair and so notified McLaren on February 28, 2007.  A few days later ACT sold its dealership to KRT, also a dealer.  ACT alleges that at the closing on its sale to KRT issues as to the roof were raised and ACT had to reduce its selling price. The record does not reflect how much ACT reduced its price and how much is attributable to the roof.
>
> Indeed, the deposition of the designated corporate representatives for ACT and for KRT shed little light on this issue.  Further, KRT utilized the building for another 4 years and made no complaints about the roof.  Finally, it was replaced by McLaren on [sic] 2013 on its own.

Trial court opinion, 10/15/14 at 1-2.  The trial court determined that ACT could not recover as a matter of law against McLaren where it failed to prove a causal connection between the alleged breach and resulting damages.  The trial court noted that McLaren was not a party to negotiations between ACT and KRT, and had no knowledge of any impending sale.  (***Id.*** at 2.)  McLaren received notice of a problem with the roof just a few days before closing. (***Id.*** at 1.)  KRT occupied the building for four years without complaint, and eventually, McLaren replaced the roof on its own accord.  (***Id.*** at 2.) Furthermore, the trial court found that ACT failed to prove how much of its reduction in selling price was attributable to the roof.  (***Id.*** at 1-2.)

Therefore, the trial court dismissed Count II of the complaint against McLaren.

This timely appeal followed on November 12, 2014. On November 13, 2014, the trial court filed a Rule 1925 statement, relying on its previous opinions and orders disposing of appellees' first and second motions for summary judgment.[1]

Appellant has raised the following issues for this court's review:

> 1.  Does ACT's claim that the Defendants [McWilliams] and [McLaren] [] breached the 800 Narrows Run Lease and the 798 Narrows Run Lease (collectively, "Leases") fail because ACT itself did not pay for repairs?
>
> 2.  Did Defendants waive the affirmative defense of failure of a condition precedent when they failed to plead it in their Answer?
>
> 3.  Are there material factual disputes as to the condition of the roofs at the time of the sale to KRT?
>
> 4.  Are damages a question of fact, which precludes the granting of summary judgment[?]
>
> 5.  Did ACT fail to demonstrate some causation between its reduction in price to KRT and anything McLaren did or did not do?

Appellant's brief at 7.

---

[1] Appellant was not directed to file a statement of errors complained of on appeal pursuant to Pa.R.A.P., Rule 1925(b), 42 Pa.C.S.A.

Initially, we note:

> Our scope of review of a trial court's order disposing of a motion for summary judgment is plenary. Accordingly, we must consider the order in the context of the entire record. Our standard of review is the same as that of the trial court; thus, we determine whether the record documents a question of material fact concerning an element of the claim or defense at issue. If no such question appears, the court must then determine whether the moving party is entitled to judgment on the basis of substantive law. Conversely, if a question of material fact is apparent, the court must defer the question for consideration of a jury and deny the motion for summary judgment. We will reverse the resulting order only where it is established that the court committed an error of law or clearly abused its discretion.
>
> *Grimminger v. Maitra*, 887 A.2d 276, 279 (Pa.Super.2005) (quotation omitted). "[Moreover,] we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." *Evans v. Sodexho*, 946 A.2d 733, 739 (Pa.Super.2008) (quotation omitted).

*Ford Motor Co. v. Buseman*, 954 A.2d 580, 582-583 (Pa.Super. 2008), *appeal denied*, 970 A.2d 431 (Pa. 2009). "A party claiming breach of contract must establish (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *Ruthrauff, Inc. v. Ravin, Inc.*, 914 A.2d 880, 888 (Pa.Super. 2006) (citation and quotation marks omitted).

> "However, damages in a breach of contract action must be proved with reasonable certainty. Otherwise, they are generally not recoverable. ***Spang & Co. v. U.S. Steel Corp.***, 519 Pa. 14, 545 A.2d 861, 866 (1988) ("As a general rule, damages are not recoverable if they are too speculative, vague or contingent and are not recoverable for loss beyond an amount that the evidence permits to be established with reasonable certainty."). The question of whether damages are speculative "has nothing to do with the difficulty in calculating the amount, but deals with the more basic question of whether there are identifiable damages." ***Wachovia Bank, N.A. v. Ferretti***, 935 A.2d 565, 572 (Pa.Super. 2007).

***Newman Development Group of Pottstown, LLC v. Genuardi's Family Market, Inc.***, 98 A.3d 645, 661 (Pa.Super. 2014) (***en banc***), ***appeal denied***, 117 A.3d 1281 (Pa. 2015) (additional citation omitted).

First, we will examine the trial court's grant of summary judgment as to Count I of the complaint, appellant's claim against McWilliams. Section 12.9 of the 800 Narrows Run Road lease provides as follows:

> Lessor shall keep and maintain the foundations, support walls and other structural portions of the Premises in good order and condition and shall make all repairs and replacements thereto and to each and every part thereof which may be necessary, required or desired. ***In the event Lessor shall fail, within thirty (30) days after notice in writing by Tenant, to make repairs or replacements required under this section 12.9, Tenant may make same and collect the costs thereof and expenses incurred in connection therewith***, together with interest thereon at the then prevailing commercial rate, from Lessor, by offsetting such costs and expenses against Fixed Rent or other payments to Lessor hereunder or, at Tenant's option, by exercising all remedies provided by law.

RR at 22 (emphasis added).

Instantly, ACT did not comply with Section 12.9, which requires 30 days' notice if "structural portions" of the premises are in need of repair or replacement. Assuming that the roof constitutes a "structural portion" of the leased premises, ACT violated Section 12.9 by giving notice to McWilliams of the deteriorated condition of the roof on February 27, 2007, and then selling the dealership on March 1, 2007, just a few days later. (RR at 100.) McWilliams had no opportunity to make repairs or replace the roof. Furthermore, Section 12.9 clearly states that, in the event the lessor fails to make repairs within 30 days, the lessee may make the repairs and recoup the costs. The record reflects that, in fact, the roof was never replaced. (Deposition testimony of James Ross, president of KRT, Inc., 11/4/10 at 63; RR at 302 ("Q. Since March of 2007, neither roof has been replaced, has it? A. I don't believe so.").) ACT wants McWilliams to pay for a new roof that was never installed. The lease agreement does not contemplate reimbursing ACT for a purchase price credit made to an unrelated third party. ACT failed to establish that McWilliams breached the

lease agreement. The trial court did not err in granting appellees' first motion for summary judgment and dismissing Count I of the complaint.[2]

Next, we turn to the lease for 798 Narrows Run Road. The McLaren lease did not contain an identical provision as that found in Section 12.9 of the McWilliams lease; however, appellant alleged that McLaren's failure to replace the roof at 798 Narrows Run Road constituted a breach of the lease and forced appellant to give KRT a credit against the purchase price of the dealership to pay for repair/replacement of the roof. It is not disputed that, under the terms of the lease, McLaren was obligated to maintain the roof. (RR at 88-98.) However, the trial court found that there was no causal connection between McLaren's alleged breach and ACT's damages; and

---

[2] Appellant argues that failure of a condition precedent, *i.e.*, ACT's failure to repair/replace the roof, is an affirmative defense which must be raised as new matter in the defendants' answer or it is waived. (Appellant's brief at 13-15.) **See** Pa.R.C.P. 1030 (affirmative defenses are waived if not raised in a responsive pleading). Appellant relies on **Judge v. Celina Mut. Ins. Co.**, 449 A.2d 658, 661 (Pa.Super. 1982), which is inapposite ("The defense of salvage value arises from the insurance contract and, as such, is an affirmative defense which must be properly pleaded in new matter." (citation omitted)). Appellant cites no authority for the proposition that failure of a condition precedent is an affirmative defense that cannot be raised for the first time at the summary judgment stage. In fact, the weight of authority indicates the opposite. **See**, **e.g.**, **Wells Fargo Bank, N.A. v. Goebel**, 6 N.E.3d 1220, 1227 (Ohio App. 2 Dist. 2014) ("Whereas an affirmative defense is separate from the merits of the plaintiff's cause of action and bars recovery even when the plaintiff has established a **prima facie** case, a condition precedent is directly tied to the merits of the plaintiff's cause of action, which is itself contingent upon satisfaction of the condition." (citation omitted)). At any rate, while they may not have used the phrase "condition precedent," appellees raised the issue of ACT's failure to repair or replace the roof in their answer. (Appellees' brief at 19.)

furthermore, that ACT's alleged damages were uncertain and speculative.

We agree.

In ***Macchia v. Megow***, 50 A.2d 314 (Pa. 1947), our supreme court

re-stated the well-established rule that:

> 'Damages for which compensation may be justly claimed and allowed are such only as naturally and ordinarily flow from the breach of contract complained of. They should be such as may fairly be supposed to have entered into the contemplation of the parties when they made the contract, or such as might according to the ordinary course of things be expected to follow its violation': ***Billmeyer, Dill & Co. v. Wagner***, 91 Pa. 92, 94; ***Hutchinson v. Snider***, 137 Pa. 1, 6, 7, 20 A. 510, 511; ***Spiese v. Mutual Trust Co.***, 258 Pa. 422, 426, 102 A. 121, 122, 123; ***Raby, Inc., v. Ward-Meehan Co.***, 261 Pa. 468, 471, 472, 104 A. 750, 751.
>
> . . . .
>
> 'Parties, when they enter into contracts, may well be presumed to contemplate the ordinary and natural incidents and consequences of performance or non-performance; but they are not supposed to know the condition of each other's affairs, nor to take into consideration any existing or contemplated transactions, not communicated nor known, with other persons. Few persons would enter into contracts of any considerable extent as to subject-matter or time if they should thereby incidentally assume the responsibility of carrying out, or be held legally affected by, other arrangements over which they have no control and the existence of which are [sic] unknown to them': Sutherland on Damages, 4th ed. vol. 1, p. 182, § 47.

***Id.*** at 316.

In **Macchia**, the defendant denied that it was he who breached the contract, and asserted that, on the contrary, it was the plaintiff who was in default by failing to make deliveries within the times promised by him or at least within a reasonable time, and claimed that because of such default on the part of the plaintiff a third party cancelled its contract with the defendant. The defendant filed a counterclaim, including an alleged loss of profits he would have made under his contract with the third party had it not been cancelled. Our supreme court in **Macchia** held that even if the defendant had proved that the cancellation of his contract with the third party was due to the plaintiff's alleged breach of his contract with the defendant, the defendant could not hold the plaintiff liable for the kind of damages asserted in his counterclaim: "There is therefore nothing in the evidence to establish that plaintiff was obliged to have in mind that a failure on his part to make deliveries within any given time would involve defendant in the cancellation of another contract and cause him a large resulting loss of profits." **Id.**

Similarly, here, even if ACT were able to prove McLaren breached the lease by failing to make repairs to the roof, McLaren cannot possibly have anticipated the resulting damages, as they were not a natural consequence of the alleged breach. As appellees argue, there is no evidence that in 2000, when the ten-year lease was signed, McLaren should have known that ACT would sell its dealership business in 2007 and that the condition of the roof

would be a factor in the purchase price of the dealership. (Appellees' brief at 24-25.) McLaren cannot be faulted for failing to predict ACT's future transactions with third parties more than six years after the lease was signed. ACT gave notice to McLaren of the need for a replacement roof just a few days before closing on the deal with KRT, and McLaren was not a party to their transaction. ACT agreed to provide KRT with a purchase credit towards a new roof without any input from McLaren. Simply stated, the type of damages alleged here, a credit given to KRT at closing, could not have been contemplated by the parties when the lease was signed in 2000. The alleged damages are not such as would "naturally and ordinarily flow from the breach of contract complained of," **Macchia**, **supra**.

In addition, ACT failed to allege damages with any reasonable certainty. ACT argues that it is undisputed that it paid for the repair/replacement of the roof at 798 Narrows Run Road through a purchase credit to KRT. (Appellant's brief at 21.) ACT received estimates from J.L. Miller & Sons of $120,000 to replace the roof at 798 Narrows Run Road, and $92,400 to replace the roof at 800 Narrows Run Road. (**Id.** at 22; RR at 100-103.) ACT argues that there is substantial evidence it paid to repair/replace the roofs and its damages were not speculative. (**Id.**)

ACT's argument ignores the fact that the roofs were not replaced, despite ACT's February 27, 2007 letter warning that "the roof is in such a state of disrepair that it must be immediately replaced . . . ." As stated

above, Mr. Ross testified that since the sale of the dealership on March 1, 2007, the roof at 798 Narrows Run Road had not been replaced. In addition, it is unclear how much of the credit on the purchase price was for the replacement of the roof at 798 Narrows Run Road. Mr. Ross testified that, "ACT paid to replace both roofs through a credit. They gave us a credit. My understanding is it wasn't to replace both roofs, it was a lot of things." (Ross deposition, 11/4/10 at 56-57; RR at 298-299.) John Caponigro, an equity owner and secretary of ACT, testified that,

> I recall that there was a list of a lot of things that the Rosses wished to have credits for. It wasn't just the roof. The roof was a major portion of it. The roofs were definitely a major portion of it, but there was [sic] a number of other items as well that we spoke of in reaching the overall credit towards the purchase price.

Caponigro deposition, 11/9/10 at 71; RR at 316. Despite the fact that the estimate to replace the roofs was $212,400, Mr. Caponigro testified that the overall reduction to the purchase price pertaining to the roofs was $173,000. (*Id.* at 74; RR at 319.) Mr. Caponigro could not recall specifically how they arrived at the $173,000 figure. (*Id.* at 72; RR at 317.) He testified that they had continued discussions with KRT right up until closing. (*Id.* at 75; RR at 320.)

Clearly, as a matter of law, ACT could not prove with reasonable certainty the amount of damages sustained as a result of McLaren's alleged breach of the 798 Narrows Run Road lease. For these reasons, the trial

court did not err in granting appellees' second motion for summary judgment and dismissing Count II of the complaint.

Order affirmed.


Musmanno joins the Memorandum.

Bowes, J. files a Concurring Statement.



Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/26/2016