ALBERT E. CARLSON AND ANOTHER v. ALLEN J. DORAN AND ANOTHER.

90 N. W. (2d) 323.

May 23, 1958—No. 37,390.

*John P. Weber,* for appellants.

*Spellacy, Spellacy & Lano,* for respondents.

FRANK T. GALLAGHER, JUSTICE.

Appeal from a judgment of the district court.

This case was commenced by plaintiffs, Albert E. Carlson and Harold G. Hawkinson, for specific performance of a contract for deed which they entered into as vendees with the defendants, Allen J. Doran and Mary Doran.

Prior to the events giving rise to these proceedings, the defendants owned certain property in Grand Rapids, Minnesota, which was platted as "Doran's Addition to Grand Rapids." On June 10, 1952, plaintiffs and defendants entered into a contract in connection with this property. By the terms of the contract the plaintiffs were to pay $27,500, plus interest and taxes and assessments on the property. The defendants were to convey by warranty deed certain tracts as the same were paid for at the rate of $6 per front foot for property not fronting on Pokegama Avenue and $20 per front foot for property fronting on Pokegama Avenue. At this point it was agreed that all of the lots should be purchased before December 31, 1954. The contract further provided that the parties should work jointly to revamp the plat of Doran's Addition. Paragraph 5 of the contract provided:

"It is contemplated that there will be sewer and water mains con-

structed so as to accommodate all of the lots of the plat of Doran's Addition to Grand Rapids, Minnesota, except lots One (1) and Two (2), Twenty-three (23) and Twenty four (24) of Block One (1), and that all parties hereto shall work jointly to secure the construction of sewer lines and water mains so as to service all of the plat of Doran's Addition, including those which have been contracted for sale pursuant to the terms of this contract and also those described as lots Seventeen (17) to Thirty-two (32) inclusive of Block Six (6) and Lots Seventeen (17) to Thirty-two (32) of Block Three (3), which are being retained by the parties of the first part, all in accordance with the overall plan as discussed by the parties hereto. It is being specifically understood and agreed that the sewer as the same shall be constructed in or on Ninth Street Southeast, and connecting with present manhole in intersection of 7th Street, S. E. and 2nd Avenue S. E. which shall service Blocks Three (3) and Six (6) of said Doran's Addition shall be as deep as construction regulations permit or less as will prove necessary to provide sewer service availablility for property fronting on the West side of Pokegama Avenue South opposite Blocks Three (3) and Six (6) of Doran's Addition to Grand Rapids, Minnesota."

Thereafter the parties did secure a vacation of Doran's Addition, and two additions were made from the old plat. The new additions were known as New Doran Addition and Clover First Addition. New Doran Addition was changed to business property on June 1, 1953. Due to the replatting, additional lots were made available to plaintiffs. Up until December 31, 1954, the plaintiffs had paid a total of $20,540 and had secured deeds to 55 lots. On this basis the plaintiffs had actually paid less for the lots received than $6 per front foot and $20 per front foot as provided in the contract.

The plaintiffs and defendants had also entered into a contract with the village of Grand Rapids and its public utilities commission under which plaintiffs and defendants agreed to pay the costs of sewers and water mains for the property contained in the original plat of Doran's Addition. In return the village agreed to accept the property. On December 31, 1954, the plaintiffs had not caused to be constructed sewers to service lots 3 through 16, block 2, of Doran's Addition or lots 25

through 33, block 7, Clover First Addition, or the property on the west side of Pokegama Avenue facing New Doran Addition. During the period prior to December 31, 1954, the plaintiffs did cause to be constructed sewer lines within the property in question.

On December 31, 1954, the plaintiffs tendered the amount of principal due under the contract. The defendants refused this tender and on January 5, 1955, notice of cancellation of contract for deed was served on plaintiffs. Following this and within 30 days the plaintiffs commenced this action for specific performance and filed a lis pendens with the registrar of titles of Itasca County. It appeared that on December 31, 1954, there were 21 lots left to be conveyed to the plaintiff under the contract. At that time there was $6,960 due on the contract.

The case was submitted to the district court on a stipulation of facts. This stipulation, among other things, provided that the testimony of the parties contained in their affidavits would have the same force and effect as if they had been called to testify and the right to cross-examination was waived by all the parties and their attorneys. It was also provided that the affidavits and depositions of P. C. Warner, village engineer, and a certain exhibit would have the same force and effect as if he had been called to testify. This same provision was made with respect to affidavits of one Henry B. Gabrielson and with respect to an affidavit and report of Donald Jackson, both men being registered civil engineers.

The findings of fact in this case were lengthy and complicated. The plaintiffs have assigned most of them as error on the ground that they are not justified by the evidence. They also assigned as error that the conclusions of law are not supported by the evidence and are contrary to law. The only issues in this case, therefore, are whether the findings assigned as error are justified by the evidence and, if so, whether they support the conclusions of law.

We will discuss only those issues necessary to a determination of this case. These fall into four categories: (1) The findings concerning whether paragraph 5 of the contract above referred to was a dependent covenant; (2) findings concerning whether the plaintiff had breached the contract; (3) findings concerning whether the plaintiff had substantially performed under the contract; and (4) findings concerning whether the defendant waived his right to demand performance under

paragraph 5.

■ The district court found that the defendants at all times insisted that sewer lines as they would be constructed in Old Doran Addition to Grand Rapids should be of sufficient depth to service all that addition and to provide sewer service for property owned by defendants on the west side of Pokegama Avenue; that before executing the contract for deed the defendants insisted on inserting in paragraph 5 the words "and connecting with present manhole in intersection of 7th Street, S. E. and 2nd Avenue S. E."; and that paragraph 5, and particularly the last sentence thereof, was a material part of the consideration flowing from plaintiffs to defendants at the time said contract for deed was executed. The court then specifically found that paragraph 5 was intended by the parties to be a dependent covenant and that the purchase price had been lowered because of its insertion in the contract due to the fact that the cost of sewers would be appreciably higher under this provision.

Plaintiffs cite Clark v. Clark, 164 Minn. 201, 207, 204 N. W. 936, 938, to the effect that:

"* * * whether or not a covenant is independent or dependent must depend upon the rational interpretation of the instrument involved, 'keeping within the good sense of the case.' "

They also cite 4 Dunnell, Dig (3 ed.) § 1801, which defines dependent, concurrent, and independent promises as follows:

"Promises are independent when, though they are mutual, breach of any one of them gives the other party a right of action, without showing performance on his part. They are dependent when the obligation to perform one depends on the prior performance of another. They are concurrent when they are to be performed at the same time. Whether promises are dependent or independent depends upon the intention of the parties, and is not to be determined by the application of hard and fast rules."

It is therefore conceded by plaintiffs that whether paragraph 5 was dependent or independent was a question of intention of the parties. While it might be said, as plaintiffs contend, that there is evidence in the record from which the trial court could have found that paragraph 5

was an independent covenant, on the other hand there is direct evidence in the record of the facts found by the trial court and therefore we certainly cannot hold that the trial court has erred in exercising its discretion to find that the provision in question actually was intended by the parties as a dependent covenant.

■ In connection with the question of whether the defendant had breached the contract and was therefore in default, the trial court found that December 31, 1954, was the completion date of the contract; that the village engineer had no knowledge of the contract obligations between the plaintiffs and defendants; and that the plaintiffs in order to save costs secured approval for the construction of sewers with the direct loss of 2.67 feet in depth and that further loss of depth occurred by reason of the fact that sewer pipes were placed at a much greater rise than was necessary. The court then found that, if such loss of depth had not been caused by the plaintiffs, adequate sewer service by gravity alone would have been available for all of New Doran Addition and the property owned by defendants on the west side of Pokegama Avenue.

The court then specifically found that the plaintiffs breached paragraph 5 of the contract by failing to work jointly with the defendants in the construction of the sewer; by failing to advise defendants of the contemplated sewer plans and specifications; by assuming the sole control of the construction of the sewers and water mains; by failing to construct the sewers and water mains to provide service for all of Clover First Addition and New Doran Addition to Grand Rapids prior to December 31, 1954, and by constructing the sewers that were constructed in Clover First Addition at such a shallow depth and with such a great rise as to make sewer service unavailable without sump-pumps or lift pumps for lots 3 through 16 of New Doran Addition (the business property retained by the defendants) and also for the property of defendants on the west side of Pokegama Avenue.

The court further found in this connection that the village of Grand Rapids would have approved specifications and plans providing for sewers at a greater depth and at a lesser rise than was used, and that therefore plaintiffs' actions were not excused by the fact that the sewer construction was according to specification plans and supervision fur-

nished by the village of Grand Rapids. With respect to this issue plaintiffs' position is that sewer service will be available to all the lots at a minimum depth of 7.12 feet which it contends is adequate. On the other hand there is evidence in the record that sewer service would be inadequate without the installation of a lift pump or in the absence of such a pump without the sewers being constructed at a greater depth than the ones in question which were constructed by the plaintiff. On this issue also the findings not only have a basis in the evidence but there is direct evidence of each of the above findings. We therefore cannot say that the trial court abused its discretion in making the findings it did in connection with the breach of paragraph 5. It must therefore be affirmed in this respect.

■ As to the issue of substantial performance, the court found that the entire contract, including the obligations placed upon the plaintiffs under paragraph 5, had to be performed by December 31, 1954. It also found that plaintiffs could have either constructed the sewers at a sufficient depth to provide sewer service for the property retained by the defendants or it could have installed a lift pump so that adequate sewer service would be available to the property in question. It then found that a lift pump could be installed at a cost not substantially more and perhaps less than the amount saved by the plaintiffs in placing the sewers at the shallow depth they did, and that if either of these alternatives had been completed by December 31, 1954, there would have been substantial performance.

The courts are not in accord as to when the rule of substantial performance applies or does not apply. It is quite generally applied in cases involving building and construction contracts. It is given a much more limited application in cases involving other contracts depending upon the fact situation in each case. In any event there must have been an attempt in good faith to perform. The nonperformance of a material and substantial part of the contract will not sustain a holding of substantial performance. 4 Dunnell, Dig. (3 ed.) § 1781.

Here the court has found that paragraph 5 was a material part of the contract and has found that plaintiffs did not do what would be necessary to meet the requirements of substantial performance. Because on this issue also there is direct evidence in the record of each of the

court's findings in this respect, we cannot say that the trial court has abused its discretion in making these findings.

In regard to the findings concerning waiver, it is the contention of the plaintiffs that in December 1952 defendants constructed a spur sewer and at that time should have known of the depth of the sewer but notwithstanding this stood idly by and watched the progress of plaintiffs. On the other hand the defendants point out that while they did have different spur sewers constructed they still had no knowledge of the fact that sewer service would not be available to them on all of the property that should have been covered under the contract. It is their claim that there is no evidence showing that the defendants, who were not in the construction business, did know what depth was required to service residence or business property.

The court found that the defendants waived no default of the plaintiffs prior to December 31, 1954, because until that date there was no default to waive. It further found that defendants had no knowledge of the sewer plans finally agreed upon by the plaintiffs and the village engineer.

Waiver is the intentional relinquishment of a known right; it is the expression of an intention not to insist upon what the law affords; it is consensual in its nature; the intention may be inferred from conduct, and the knowledge may be actual or constructive, but both knowledge and intent are essential elements. 20 Dunnell, Dig. (3 ed.) § 10134, and cases cited therein. Thus the doctrine of waiver also involves a fact question. The court has found there was no waiver and there is evidence in the record in support of its findings. Therefore the trial court must be upheld on this issue also. We certainly could not say in the face of the evidence that defendants had waived their rights contrary to the findings of the trial court.

The plaintiffs also assign as error all the conclusions of law made by the trial court. However, inasmuch as the court found that paragraph 5 was a dependent covenant; that the plaintiffs had not substantially performed their obligations thereunder and had thus breached the contract; and that the defendants had not waived their rights to insist on performance, it follows that the cancellation of the contract by defendants was valid. In such a situation the plaintiffs would not be entitled to

specific performance of a contract that defendants had rightfully and legally cancelled, and thus the trial court's conclusions of law must also be affirmed.

Affirmed.