423 A.2d 1032

**J. W. GOODLIFFE & SON**

v.

**Michael ODZER d/b/a Odzer Scrap Yard, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 9, 1980.

Filed Dec. 19, 1980.

Stanley P. Ticktin, Stroudsburg, for appellant.

Charles J. Fonzone, Allentown, for appellee.

Before SPAETH, HESTER and CAVANAUGH, JJ.

SPAETH, Judge:

This is an appeal from a judgment entered in an action on a written contract. The trial judge, sitting without a jury, found against appellant in the amount of $24,755.95. On appellant's exceptions, the court *en banc* reduced this amount to $23,530, but otherwise it dismissed the exceptions.

Appellant is a scrap dealer. Appellee is a supplier of industrial gas. The gas is delivered in reusable cylinders, which remain appellee's property. Appellee's standard practice is to make a demurrage (or rental) charge for the cylinders in addition to the charge for the gas.

For about a year, appellant and appellee did business under an oral agreement. They then entered into a written contract, which was a standard form and was supplied by appellee.[1] Paragraph five provided that the cylinders were appellee's and were only loaned to appellant for the purpose

---

1. The contract reads in relevant part:

    5. Where gases sold hereunder are to be delivered in Seller's cylinders, said cylinders are loaned by Seller to Buyer for that purpose only. Buyer agrees not to permit refilling of Seller's cylinders with any gas, liquid or solid, while in Buyer's custody. Buyer also agrees that products purchased under this agreement are for use by Buyer in its own business and that nothing purchased under this agreement will be resold or supplied to any person, firm or corporation other than a subsidiary or affiliate of Buyer.

    6. DEMURRAGE: Buyer shall return each cylinder furnished by Seller hereunder, expenses prepaid by Buyer, to the place at which the same was delivered to Buyer by Seller, and not later than ninety days after its delivery to Buyer. Seller shall make a demurrage charge at its standard published rate per net debit cylinder day incurred by Buyer in each month, . . . Buyer agrees to pay or cause to be paid promptly, on demand, to the Seller at Seller's then established valuations and rates for loss of or damage to any of said cylinders or fittings resulting from any cause after delivery thereof to Buyer.

    10. This agreement embraces all understandings and agreements of every name and nature between Buyer and Seller, supersedes any previous existing agreement between the parties, and may be modified only by an instrument or instruments in writing executed by Buyer and by an officer of Seller authorized to accept this agreement. This agreement is subject to acceptance by an officer of Seller.

of delivering gas, and that appellant would not refill them. Paragraph six provided that appellant would return the cylinders to appellee, and would pay demurrage for late return, and also, would pay for the loss of or damage to the cylinders. At appellant's request this paragraph was deleted by having two diagonal lines drawn through it before the contract was signed. Paragraph ten contained a merger clause and also provided that any modification of the contract had to be in writing. The term of the contract was three years, with provision for automatic year-to-year renewal unless a party gave 12 months notice of intent to terminate. Eventually the parties severed their business relationship, and this litigation ensued.

Appellee's complaint alleged that appellant owed $3,775.95 for gas delivered and not paid for and in addition had failed to return or account for more than 200 cylinders valued at $20,980. Appellant's answer denied liability and made a counterclaim for $16,315.69, which was alleged to be the amount of demurrage appellant had paid over the years; according to the answer, this demurrage was improper under the written contract between the parties and had been paid in error.

At trial, appellee's principal witness was its manager, Albert Lilly. His testimony may be summarized as follows. Two or three months after the written contract took effect, Lilly approached appellant and requested that the contract be modified to provide for the demurrage charge called for by the previously deleted paragraph 6. The reason for this request was that the turnover of the cylinders in appellant's possession was too slow for appellee to realize any return on its investment in the cylinders. Appellant initially resisted but agreed to the modification after Lilly suggested that he could recoup the charge by passing it on to his own customers. Appellant's agreement to the modification was oral only; appellee did not claim that the contract was ever modified in writing. Lilly provided appellant with copies of the various invoices used by appellee so that he could use them as models for invoices of his own. R.R. 46a–48a.

Until they terminated their business relationship some three years later, appellee charged, and appellant paid, demurrage.

Appellant's version differed. He testified that he had not agreed to the modification of the contract but had agreed to start charging demurrage to his customers in order to encourage a faster turnover of the cylinders. He claimed to have been unaware that appellee was charging him demurrage; according to him, appellee's bills were paid by his bookkeepers and he never personally reviewed them. R.R. 93a–96a. However, one of appellant's bookkeepers testified that she had been aware of the demurrage charge and had been instructed by Lilly in how to pass on the charge to appellant's customers. R.R. 168a.

▇▇▇ The only issue that requires any extended discussion is appellant's liability for demurrage. Since initially, because of the deletion of paragraph 6 of the contract, appellant was not liable for demurrage, whether appellant became liable for demurrage depends on whether Lilly's and appellant's oral conversation and the parties' subsequent conduct together effected either a modification of the contract or a waiver of the provision that any modification had to be in writing. However, appellant's liability for gas delivered and not paid for, and his liability for the missing cylinders, do not depend on finding a modification or waiver. Paragraphs one, two and three of contract contain the basic terms of sale of the gas itself. Appellant does not deny his responsibility to comply with these terms. As noted above, paragraph 5 provides that the cylinders were merely being loaned to appellant and would be returned by him. It may be that if paragraph 6 had not been deleted, appellant's liability for damage to the cylinders or their loss would have been broader, for paragraph 6 included a provision to pay for damage or loss "resulting from any cause after delivery . . . ." However, the deletion of paragraph 6 could not have the result of relieving appellant of all responsibility to account and pay for cylinders clearly specified by the contract to be on loan; because paragraph 6 was deleted, the cylinders did not become appellant's cylinders. Appellant

disputed appellee's calculations of both the amount due for gas delivered and not paid for and the number of cylinders not returned. However, appellee's invoices concerning its transactions with appellant were introduced at trial, and the lower court's judgment for appellee represents a finding that it accepted appellee's figures. Having been approved by the court en banc, this finding has the same weight as a jury verdict. *Darlington Brick and Clay Products Company, Inc. v. Aino*, 225 Pa.Super. 186, 310 A.2d 401 (1973).

With respect to the issue of appellant's liability for demurrage, the lower court concluded that although the written contract prohibited oral modification, the parties' conduct constituted a waiver within the meaning of section 2–209(4) of the Uniform Commercial Code.[2] While the emphasis in our analysis differs somewhat from the lower court's, we agree with this conclusion.

■ It is settled that the Uniform Commercial Code changed the law with regard to the oral modification of a contract that by its terms requires any modification to be in writing. *Universal Builders, Inc. v. Moon Motor Lodge*, 430 Pa. 550, 244 A.2d 10 (1968). The section of the Code governing modification of a contract for the sale of goods provides as follows:

2–209. Modification, Rescission and Waiver.

(1) An agreement modifying a contract within this Article needs no consideration to be binding.

(2) A signed agreement which excludes modification or rescission except by a signed writing cannot be otherwise modified or rescinded, but except as between merchants such a requirement on a form supplied by the merchant must be separately signed by the other party.

(3) The requirement of the Statute of Frauds section of this Article (§ 2–201) must be satisfied if the contract as modified is within its provisions.

**2.** Act of April 6, 1953, P.L. 3. Reenacted October 2, 1959, P.L. 1023, 12A P.S. §§ 1–101 *et seq.* Reenacted November 1, 1979, P.L. 225, No. 86, 13 Pa.C.S.A. §§ 1101 *et seq.*, effective January 1, 1980.

(4) Although an attempt at modification or rescission does not satisfy the requirements of subsection (2) or (3) it can operate as a waiver.

(5) A party who has made a waiver affecting an executory portion of the contract may retract the waiver by reasonable notification received by the other party that strict performance will be required of any term waived, unless the retraction would be unjust in view of a material change of position in reliance of the waiver.

U.C.C. § 2–209, 13 Pa.C.S.A. § 2209.

When these provisions are applied to the present case, it is evident that section 2–209(2) prevented the conversation between appellant and Albert Lilly from serving as an effective modification of the contract. However, the conversation did constitute what is referred to in section 2–209(4) as "an attempt at modification." This attempt, when combined with a course of dealing over a period of more than three years and hundreds of transactions in which appellee charged and appellant paid demurrage, represented a waiver. In this regard, section 2–208 of the U.C.C. provides that when a contract provides for repeated occasions of performance, the course of performance is relevant in determining the meaning of the contract and the existence of a modification or waiver of any term inconsistent with the actual course of performance.

Much of appellant's argument is based on his assertion that no attempt was ever made to modify the contract. Appellant's brief at 15. However, as noted above when summarizing the testimony, whether an attempt was made to modify the contract was a disputed question of fact about which the testimony of appellee's manager, Albert Lilly, was directly contrary to that of appellant. Viewed in the light most favorable to the verdict winner, *Darlington Brick and Clay Products Company, Inc. v. Aino, supra,* the record supports the conclusion that the parties' conduct did constitute a waiver as defined by section 2–209(4) of the Uniform Commercial Code.

Affirmed.