# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 04-1200

———————

| | | |
|---|---|---|
| Cameo Homes, | * | |
| | * | |
| Plaintiff - Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the District of |
| Kraus-Anderson Construction | * | Minnesota. |
| Company; City of East Grand Forks, | * | |
| a political subdivision, | * | |
| | * | |
| Defendants - Appellees. | * | |

———————

Submitted: November 17, 2004
Filed: January 18, 2005

———————

Before MURPHY, HANSEN, and MELLOY, Circuit Judges.

———————

MURPHY, Circuit Judge.

Cameo Homes contracted with the City of East Grand Forks to do concrete work in the reconstruction efforts following a severe flood. Disagreements arose and Cameo eventually sued the city for breach of contract, statutory violations, and various torts, seeking compensatory and statutory damages. The district court[1]

———————

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

granted summary judgment to the City and Kraus-Anderson, and Cameo appeals. We affirm.

After extensive flooding in spring 1997 in East Grand Forks, Minnesota, the City entered into a large number of contracts for the repair or reconstruction of damaged and destroyed municipal facilities. Kraus-Anderson, a Minnesota corporation, was hired by the City as construction manager for four of the projects: City Hall, the Holiday Mall, the Infill Building, and the City fire station. As construction manager, Kraus-Anderson was responsible for overseeing the work of the contractors who were hired by the City. Cameo Homes, a North Dakota corporation, was hired by the City as concrete contractor for the four construction projects Kraus-Anderson was managing. No contracts were formed between Kraus-Anderson and Cameo.

Each of Cameo's contracts with the City incorporated a standard set of "General Conditions for the Contract of Construction" drafted by the American Institute of Architects. The conditions provide that each contract is the "entire and integrated agreement between the parties," GC § 1.1.1, and that the contract could be modified only through written agreements such as "change orders." Id. Change orders had to be prepared by Kraus-Anderson, and they were to specify how the work was to be modified, for what deadline, and for what additional compensation, if any. Id. § 7.2.1. To be effective, a change order required the signatures of Kraus-Anderson, the City, the project architect, and Cameo. Id. § 7.2.1. The conditions contain no provision for oral modification of contract terms.

The general conditions in Cameo's contracts with the City also establish a process for making "claims" regarding contract terms or matters "arising out of or relating to" the terms. GC § 4.7.1. The general conditions distinguish claims from change orders. Change orders modify the terms of a contract, while claims seek relief owed "as a matter of right" under the existing terms of a contract. Id. §§ 1.1.1, 4.7.1.

Under the claims process, Cameo was required to present written notice of any claim to the project architect within 21 days of an event or of the discovery of an event giving rise to the demand.  Id. § 4.7.3.  Failure to present a claim to the architect would preclude later litigation about it, for the architect's decision was a condition precedent to the right to litigate a dispute.  Id. § 4.7.2.

Cameo's contracts for the Holiday Mall, Infill Building, and fire station projects also incorporated a final payment provision.  Under this provision Cameo's "acceptance...of final payment" would release the City from "all claims and all liability...other than claims and stated amounts as may be specifically excepted by [Cameo]."  Upon completing each of the three projects, Cameo signed an Affidavit of Payment of Debts and Claims, stating that:

> payment ha[d] been made in full and all obligations have otherwise been satisfied for all materials and equipment furnished, for all work, labor, and services performed, and for all known indebtedness and claims against the Contractor for damages arising in any manner in connection with the performance of the Contract...for which the Owner or Owner's property might in any way be held responsible or encumbered.

Cameo also signed a Contractor's Affidavit of Release of Liens after each of the three projects.  This affidavit stated that Cameo and all its subcontractors, suppliers and laborers "who have or may have liens or encumbrances or the right to assert liens or encumbrances against any property of [the City] arising out of the performance of the Contract" had released or waived those liens "to the best of [Cameo's] knowledge, information and belief."  Finally, Cameo's insurer signed Consent of Surety to Final Payment forms.  In these forms the insurer approved the City's final payments to Cameo for its work on the Holiday Mall, Infill Building, and fire station.  No surviving claims or liabilities were stated on any of these documents.

Numerous disagreements arose during Cameo's performance of the contracts. The beginning of the company's City Hall work was delayed for two months because other contractors had failed to meet the schedule for excavating the site. According to Cameo, Kraus-Anderson nonetheless insisted that its work be completed on schedule, resulting in its incurring significant overtime expenses. Cameo requested change orders to cover the additional costs, but the modifications were never approved. Errors in the architectural plans provided by the City further complicated Cameo's performance on the City Hall contract. According to Cameo, mistakes in the City's blueprints required it to remove and repour substantial amounts of concrete. This resulted in added delays and costs, and as a result Kraus-Anderson said it would have to verify the proper placement of concrete before Cameo did any future pours. The problem of misplacement apparently continued, and Cameo was required to remove and repour more concrete. No change orders were approved for the additional expenses, and Cameo was not compensated for them.

Similar difficulties arose during Cameo's work on the Holiday Mall project. Kraus-Anderson demanded that expensive fire treated lumber be used, but Cameo did not believe it was required under the terms of the contract. After Kraus-Anderson threatened to levy on Cameo's bond or terminate its contract, Cameo went ahead and installed the wood without first obtaining a change order. It later submitted change orders to cover the added $50,180 expense, but they were denied.

Unexpected costs were also incurred in Cameo's work on the Infill Building. Kraus-Anderson required Cameo to change hardware it had already installed, and Cameo claims that $257.29 of its expense in responding was neither approved in a change order nor paid. Third party delay also slowed Cameo's progress on this project, resulting in an alleged acceleration expense of $41,863 that was never approved in a change order or compensated.

Without first giving written notice of its claims to the project architect, Cameo filed an action in Minnesota district court against the City and Kraus-Anderson. It alleged breach of contract by the City in its failure to compensate Cameo for its additional expenses; breach of contract by the City in its failure to pay ten percent bid increases that Cameo inserted on its bid envelopes but did not incorporate into the contracts; negligence by the City and Kraus-Anderson in the design and verification of concrete placements; defamation; fraud; RICO violations; intentional and negligent interference with prospective business advantage; intentional interference with contractual relations; extortion; civil conspiracy; and violations of the Davis-Bacon Act. Cameo sought $367,508.13 in damages for breach of contract, $572,256.82 in damages for defamation, additional but unspecified damages for other injuries, and attorney fees.

The defendants removed the case to federal court and moved for summary judgement. The district court granted their motions and dismissed all of the claims in Cameo's complaint. Cameo's allegations of breach were rejected because of its failure to give proper notice of its claims and its acceptance of final payment for three of the projects, both being barriers to litigation. Cameo's claim for negligence in the preparation of architectural plans was dismissed since all duties relating to the blueprints were contractual in nature. Finally, Cameo's allegation of negligence in the verification of concrete placements was denied on the ground that it was itself responsible under the contract for ensuring the proper placement of the concrete. The remaining claims were dismissed, but Cameo has not appealed those dismissals. Cameo's subsequent motions for reconsideration and for alteration or amendment of judgment were denied, and Cameo appeals.

On its appeal Cameo contests only the dismissal of its breach of contract and negligence claims. Cameo argues that the district court erred in (1) determining that it had failed to give notice of its claims to the architect and had accepted final payment for the work, and (2) concluding that there was no extracontractual duty on

the part of the City and Kraus-Anderson to provide accurate blueprints and verify the placement of concrete.

We review the district court's construction of a contract and grant of summary judgment de novo. Turner v. Alpha Phi Sorority House, 276 N.W.2d 63, 66 (Minn. 1979) ("The construction and effect of a contract are questions of law for the court."); Gentry v. Georgia-Pac. Co., 250 F.3d 646, 649 (8th Cir. 2001). Summary judgment is appropriate if, when the record is viewed in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); Smith v. Ashland, Inc., 250 F.3d 1167, 1171 (8th Cir.2001).

Cameo first contends that the district court erred in determining that Cameo failed to satisfy the contractual condition precedent to litigation because it had not given written notice of its breach of contract claims to the architect. According to Cameo, "[t]he process for submitting a claim is referred to as the 'change order process.'" It contends that the parties had amended that process in practice, allowing change order requests to be submitted through Kraus-Anderson and approved after a modified obligation had already been performed. Cameo argues that its submission of change order requests to Kraus-Anderson thus satisfied the contractual requirement that written notice of claims be given to the project architect before litigation.

Cameo conflates the change order process, designed to modify the terms of an agreement, with the claims process, designed for the assertion of rights under the existing terms of an agreement. While Cameo submitted some evidence which suggested that the parties developed an alternate practice for the approval of change orders,[2] Cameo has not shown that the parties understood that its submission of

---

[2]Cameo attempts to support its modification argument with a fax from the project architect informing it that certain undefined "issues" were thereafter to be

-6-

change order requests to Kraus-Anderson was effectively equivalent to submission of claims to the architect. Moreover, the contracts provide for amendment only by written modification, see GC § 1.1.2, and the claims process was not modified in writing. Cameo failed to give written notice to the architect of its breach of contract claims against the City as required by the contract. Id. § 4.7.3. It is therefore contractually barred from bringing them here. Id. § 4.7.2.

Cameo's failure to provide the architect with written notice of its claims also precludes its assertions of negligence against the City. Cameo contends that the City breached its duty to provide "adequate plans and specifications" by furnishing blueprints with significant dimensional errors. Cameo also alleges that the City was somehow negligent in its verification of concrete placements, even though it had no direct involvement in the process. Because these claims "aris[e] out of or relat[e] to" Cameo's contracts with the City, Cameo was contractually required to give the project architect notice of them before initiating litigation, and it did not. See GC §§ 4.7.1, 4.7.2.

Cameo also disputes the district court's determination that it "accept[ed]" final payment on the Holiday Mall, Infill Building and fire station projects, thus releasing the City from all liability under the contractual final payment provisions. The court based its conclusion on three separate sets of exhibits: the Contractor's Affidavit of Payments of Debts and Claims, stating that "payment ha[d] been made in full" for all expenses and "for all known indebtedness and claims against the Contractor"; the

---

addressed through Kraus-Anderson. This document was first presented to the district court with Cameo's Motion to Reconsider Summary Judgment. Since we review only that evidence before the district court at the time summary judgment was granted, Amerinet, Inc. v. Xerox Corp., 972 F.2d 1483, 1489-90 (8th Cir. 1992) (citations omitted), the fax is outside the record on appeal. It would have no effect in any event because it had not been signed by the City and could therefore not effectively modify the contracts. See GC § 1.1.1.

Contractor's Affidavit of Release of Liens, stating Cameo's belief that all "liens or encumbrances or the right to assert liens or encumbrances" against the City had been waived by other documents; and the Consent of Surety to Final Payment, in which Cameo's insurer approved final payments to Cameo for the projects. There appears to be a genuine question as to whether these documents show that Cameo accepted final payment from the City. The Contractor's Affidavit of Payment of Debts and Claims certifies that Cameo had paid its subcontractors in full, not that Cameo had itself accepted final payment from the City. The Contractor's Affidavit of Release of Liens did not itself release the City from liability, but rather stated Cameo's belief that all liens and the right to assert future liens had been waived in documents attached to the affidavit; neither party introduced these attachments into evidence. Finally in the Consent of Surety to Final Payment, Cameo's insurer merely "approve[d]" of final payment to Cameo but did not assert that payment had been made. A genuine issue also appears to have been raised by an affidavit and deposition testimony in which Cameo's president references an unpaid balance of $41,297.37 retained by the City, contradicting the City's assertion that Cameo accepted final payment for the projects. While summary judgment may therefore have been inappropriate on the question of final payment, we do not need to decide the issue as Cameo's failure to give proper notice of its contractual claims remains a bar to their litigation.

Cameo finally contests the district court's grant of summary judgment on the issue of Kraus-Anderson's negligence. It says that Kraus-Anderson voluntarily assumed a duty "outside the scope of the contract" in an October 1, 1999 letter. In that letter Kraus-Anderson stated that Cameo was to contact it for "verifications and approval...[p]rior to any further placement of concrete." Cameo argues that Kraus-Anderson thus took on a duty to ensure that the concrete was properly placed, citing Isler v. Burman, 232 N.W.2d 818, 822 (Minn. 1975) ("[O]ne who voluntarily assumes a duty must exercise reasonable care or he will be responsible for damages resulting from his failure to do so."). Cameo asserts that Kraus-Anderson was negligent in the

performance of this duty, resulting in substantial costs to Cameo in removing and replacing concrete installments.

In order to recover in negligence, a plaintiff must demonstrate the breach of a duty "'imposed by law not merely one imposed by contract.'" United States v. Johnson, 853 F.2d 619, 622 (8th Cir. 1998) (emphasis and internal quotations removed) (quoting D & A Dev. Co. v. Butler, 357 N.W.2d 156, 158 (Minn.Ct.App 1984)). Cameo has not identified such a duty. Kraus-Anderson was acting wholly within the scope of the contracts in requiring its verification and approval of Cameo's concrete placements. Under the terms of the general conditions of the agreements, Kraus-Anderson was obligated to see that all contractors were performing in accordance with the contracts. GC § 4.6.2. Kraus-Anderson was authorized to "require additional inspection or testing" of the contractors' work without thereby assuming a "duty or responsibility...to the Contractor." Id. §§ 4.6.3, 4.6.10. The general conditions of the agreements also specify that Cameo was "not...relieved of obligations to perform the Work in accordance with the Contract Documents...by activities or duties of the Construction Manager." Id. § 3.3.3; see also § 4.6.6 (construction manager not responsible for a contractor's failure to perform in accordance with the contract). Thus, in requiring verification of Cameo's concrete placements, Kraus-Anderson acted within the scope of the contracts and incurred no corresponding obligation to Cameo. Cameo's disagreement with Kraus-Anderson would have properly been expressed through the contractual claims process rather than a negligence action. The district court did not err in dismissing the negligence claim.

Cameo also contends that Kraus-Anderson negligently provided "plans and specifications with numerous dimensional errors." Cameo has not demonstrated that Kraus-Anderson played any role in furnishing the plans, nor has it identified any legal duty for Kraus-Anderson to ensure the blueprints' accuracy. The district court did not therefore err in dismissing the claim.

For these reasons the judgment of the district court is affirmed.

_____