**VALSPAR REFINISH, INC., Respondent,**

v.

**GAYLORD'S, INC., a California corporation, Appellant.**

No. A06–2227.

Supreme Court of Minnesota.

April 23, 2009.

---

Jack D. Elmquist, Jack D. Elmquist Law Offices, St. Paul, Minnesota; and Michael Leight, Law Offices of Michael Leight, Long Beach, California, for appellant.

Richard T. Ostlund, Janel M. Dressen, Anthony Ostlund Baer Louwagie & Ross, P.A., Minneapolis, Minnesota, for respondent.

## OPINION

DIETZEN, Justice.

Respondent Valspar Refinish, Inc. (Valspar) commenced this action to recov-

er damages arising out of an alleged breach by Gaylord's, Inc. (Gaylord's) of the parties' refinish-coat supply agreement. Gaylord's denied the claim and asserted numerous counterclaims. Following a hearing, the Hennepin County District Court granted summary judgment in favor of Valspar, dismissed Gaylord's counterclaims, and awarded Valspar damages, concluding that Gaylord's breached the parties' refinish-coat supply agreement. The court of appeals affirmed and concluded, among other things, that Gaylord's contract claims were barred because Gaylord's failed to provide written notice of default as the contract required and that Gaylord's fraud claims should be dismissed because Gaylord's failed to establish reasonable reliance. *Valspar Refinish, Inc. v. Gaylord's Inc.*, No. A06–2227, 2007 WL 4237504 (Minn.App. Dec.4, 2007). We affirm.

Valspar is a wholly-owned subsidiary of Valspar Corporation, a paint-coating supplier headquartered in Minneapolis, Minnesota. Gaylord's is a California corporation that manufactures and sells fiberglass truck-bed lid covers for light trucks, located in Santa Fe Springs, California.

In the spring of 2003, a Valspar representative approached Gaylord's to discuss a possible supply agreement in which Valspar would provide the automobile paint coverings for Gaylord's truck-bed lid accounts. Gaylord's indicated that it would be interested if Valspar could provide a quality product and meet its pricing requirements. Gaylord's also indicated that it was interested in working with a company that would provide an up-front capital investment to pay for a new paint booth in its proposed expanded facility.

In the fall of 2003, Valspar's paint products were tested at Gaylord's facilities. The testing evaluated Valspar's base-coat and clear-coat products to determine if they met Gaylord's standards. Over a three-day period, the parties sprayed approximately 50 truck-bed lid covers. According to Valspar affidavits, Gaylord's indicated that the Valspar products met Gaylord's requirements and that it was pleased with the results.

Gaylord's claimed, however, that the testing demonstrated significant problems with color matches and paint application. Specifically, 26 of the 30 Valspar colors tested had to be reformulated to match Gaylord's samples. Further, Valspar was not able to match the new automobile colors coming into the market. Additional application problems included insufficient coverage, the occurrence of fish-eyes in the paint, and mottling. Valspar assured Gaylord's that it would resolve these problems and encouraged Gaylord's to enter into a contract.

In October 2003, Valspar and Gaylord's entered into a five-year contract. The agreement provided, among other things, that Valspar would be the exclusive supplier for Gaylord's truck-bed lid business and that Valspar would pay $400,000 in the form of a rebate to Gaylord's upon execution of the agreement.

Gaylord's states that the problems identified during the testing persisted despite Valspar's attempts to resolve the problems. Specifically, the base coat applied unevenly, the texture was coarse and blotchy, the colors did not match, fish-eyes continued to appear, and the clear coat was extremely slow to dry or "cure." On November 12, 2004, Gaylord's sent an e-mail to Valspar documenting the problems it experienced with the Valspar products. Gaylord's then stopped buying Valspar products and switched to another supplier, claiming it was losing business and costs were increasing because of corrections needed to resolve problems with the prod-

ucts. In December 2004, Valspar sent a representative to Gaylord's facility in an attempt to resolve the problems. That effort was unsuccessful.

In April 2005, Valspar sued Gaylord's, alleging that Gaylord's breached the contract and seeking return of the rebate, payment of unpaid invoices, and other damages. Gaylord's denied the allegations in the complaint and asserted various counterclaims against Valspar.

Valspar moved for summary judgment, alleging that Gaylord's failed to give written notice of default as required by the contract, and therefore it breached the contract when it stopped purchasing Valspar paint products in November 2004. Valspar also argued that Gaylord's counterclaims for breach of contract, breach of warranty, and revocation of acceptance were barred. The district court agreed and granted Valspar's motion for summary judgment, and dismissed Gaylord's related breach of contract counterclaims. The court also dismissed Gaylord's breach of implied warranty claim and its negligent misrepresentation and fraudulent inducement claims on the ground that they failed as a matter of law. The court of appeals affirmed the district court. *Valspar Refinish, Inc. v. Gaylord's, Inc.*, No. A06–2227, 2007 WL 4237504 (Minn.App. Dec.4, 2007).

### I.

Gaylord's argues that the district court and court of appeals erred in concluding that Gaylord's materially breached the contract by failing to give written notice. Gaylord's also argues that there are genuine issues of material fact that preclude summary judgment.

■ Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *O'Malley v. Ulland Bros.*, 549 N.W.2d 889, 897 (Minn. 1996). But to raise a genuine issue of material fact the nonmoving party must present more than evidence "which merely creates a metaphysical doubt as to a factual issue and which is not sufficiently probative with respect to an essential element of the nonmoving party's case to permit reasonable persons to draw different conclusions." *DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn.1997). We review this evidence de novo and in a light most favorable to the nonmoving party. *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993).

### A. Written Notice

■ Gaylord's argues that the contract did not require it to give written notice to Valspar of defective paint products before it could pursue its breach of contract, breach of warranty, and revocation of acceptance claims. Valspar argues that the contract required written notice and that Gaylord's failed to provide that notice.

■ "Contract interpretation is a question of law that we review de novo." *Travertine Corp. v. Lexington–Silverwood*, 683 N.W.2d 267, 271 (Minn.2004) (citing *Employers Mut. Cas. Co. v. A.C.C.T., Inc.*, 580 N.W.2d 490, 493 (Minn.1998)). The primary goal of contract interpretation is to ascertain and enforce the intent of the parties. *Motorsports Racing Plus, Inc. v. Arctic Cat Sales, Inc.*, 666 N.W.2d 320, 323 (Minn.2003). We have consistently stated that when a contractual provision is clear and unambiguous, courts should not re-

write, modify, or limit its effect by a strained construction. *Telex Corp. v. Data Products Corp.*, 271 Minn. 288, 294–95, 135 N.W.2d 681, 686–87 (1965); *Anderson v. Twin City Rapid Transit Co.*, 250 Minn. 167, 178, 84 N.W.2d 593, 601 (1957); *Grimes v. Toensing*, 201 Minn. 541, 545, 277 N.W. 236, 238 (1938).

■ A contract may provide the manner or time frame in which a party is required to give the other party notice of breach of the contract. *See DeWitt v. Itasca–Mantrap Co-op. Elec. Ass'n*, 215 Minn. 551, 559, 10 N.W.2d 715, 719 (1943). More importantly, parties to a contract may expressly agree that written notice of breach is a condition precedent to bringing a breach of contract claim and that the failure to give written notice bars a subsequent claim. *See Cameo Homes v. Kraus–Anderson Constr. Co.*, 394 F.3d 1084, 1088 (8th Cir.2005).

The contract is a contract for the sale of goods that is governed by Article II of the Uniform Commercial Code (UCC), Minn. Stat. §§ 336.2–101–.2–725 (2008).[1] Under the UCC, a buyer has the right to reject goods "within a reasonable time after their delivery or tender," but must "seasonably" notify the seller. Minn.Stat. § 336.2–602(1). In addition, a buyer can revoke its acceptance of goods "whose non-conformity substantially impairs [their] value to the buyer if [they were] accepted ... on the reasonable assumption that [the] nonconformity would be cured and it has not been seasonably cured." *Id.* § 336.2–608(1)(a). "Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it...." *Id.* § 336.2–608(2).

Paragraph 6 of the contract states that the nondefaulting party "shall have the right to terminate this Agreement" provided that the defaulting party does not cure the default within 60 days after "notice" that describes the nature of the default. Paragraph 10(c) states that all "notices" required by the contract must be in writing. Gaylord's argues that written notice of default was not required because its repeated complaints about paint performance put Valspar on notice that Gaylord's intended to terminate the contract. Thus, the question here is whether Gaylord's oral statements to Valspar employees satisfied the formal preconditions to termination required by the agreement.

We conclude that oral notice is not sufficient under the contract. The contract clearly and unambiguously states that the nondefaulting party must send written notice of default as a condition precedent to terminating the contract. The written notice requirement applies to any default "in performing any material obligation under this Agreement." The explicit purpose of the notice is to describe the default in reasonable detail to afford the "defaulting party" 60 days to cure the default and avoid termination of the contract. Thus, we conclude that the contract requires that Gaylord's provide written notice of paint product defects before it may assert its breach of contract and revocation of acceptance claims.[2]

1. Both parties agree that the contract is governed by the Uniform Commercial Code (UCC). Article 2 of the UCC "applies to transactions in goods." Minn.Stat. § 336.2–102. " 'Goods' means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (article 8) and things in action." Minn.Stat. § 336.2–105(1).

2. Minnesota Statutes § 336.2–608(2) states that "[revocation of acceptance] is not effective until the buyer notifies the seller [of the revocation]." Parties can agree to require written notice of revocation. *See* Minn.Stat.

■ The express warranty provision of the agreement also requires written notice. It states that "[i]f Buyer discovers a failure of the Products to substantially conform to Seller's published specifications, Buyer must within 10 days after discovery (but in no event later than 180 days after receipt) notify Seller in writing." Thus, the requirement of written notice under the contract applies equally to Gaylord's breach of warranty claim.

■ Gaylord's argues that its e-mail to Valspar on November 12, 2004, constitutes written notice under the contract. The e-mail stated "The paint you are making us use will not work. . . . We are testing other brands to see if the problem really is Gaylord's like Valspar keeps telling us or is it the material we are using." Gaylord's argument lacks merit for two reasons. First, the agreement requires that all notices be in writing and hand-delivered or mailed with proof of delivery. Second, the e-mail does not indicate that a default has occurred, much less describe a default in sufficient detail to give Valspar an opportunity to cure. Thus, the parties' agreement did not allow for e-mail notice, and even if it had, the content of Gaylord's e-mail notice lacked sufficient detail to satisfy the notice requirement.

We conclude that Gaylord's breach of contract, revocation of acceptance, and breach of warranty claims are barred as a matter of law because Gaylord's failed to provide the written notice that the contract required as a precondition to terminating the agreement.

## B. Waiver

■ Alternatively, Gaylord's argues that Valspar waived its right to receive written notice of its various alleged defaults. Specifically, Gaylord's argues that when Valspar met with Gaylord's production personnel to resolve its oral complaints, Valspar tacitly acknowledged its default under the contract and waived its right to receive written notice. Valspar counters that eliminating the requirement of written notice of default is a modification of the contract and is not effective unless it is in writing and signed by both parties. Paragraph 10(a) of the contract states that "[t]his Agreement may be changed only in a written document signed by both parties."

A sales contract clause that requires all contract changes to be in writing is enforceable. *See* Minn.Stat. § 336.2–209(2) ("A signed agreement which excludes modification or rescission except by a signed writing cannot be otherwise modified . . . ."). But Minn.Stat. § 336.2–209(4) sets forth an exception, providing that "[a]lthough an attempt at modification or rescission does not satisfy the requirements of subsection (2) . . . it can operate as a waiver." Comment 4 to U.C.C. § 2–209(4) (2004) states "[this section] is intended, despite the provisions of subsection[ ] 2 . . ., to prevent contractual provisions excluding modification except by a signed writing from limiting in other respects the legal effect of the parties' actual later conduct." *Accord* Minn.Stat. § 336.1–303(f) (2008).

Many other courts, including the Minnesota Court of Appeals, have interpreted U.C.C. § 2–209(4) to mean that parties to a sales contract may waive a requirement that any changes to the contract must be in writing and, as a result, waive other

§ 336.1–302(a) (2008) ("[T]he effect of provisions of the Uniform Commercial Code may be varied by agreement."). Here, the parties explicitly agreed that any "notices" delivered pursuant to the parties' contractual responsibilities must be in writing, including the buyer's rejection or revocation of acceptance of seller's goods.

contractual requirements without a written agreement.[3] We agree with this interpretation, and conclude that Minn.Stat. § 336.2–209(4) modifies Minn.Stat. § 336.2–209(2). Under subsection 2–209(4), parties to a contract for the sale of goods may waive a contract's requirement that any modification must be in a writing signed by both parties. This exception is narrow, however, and any waiver under subsection 2–209(4) must satisfy the rules and principles of Minnesota law regarding waiver. Minn.Stat. § 336.1–103(b) (2008) ("Unless displaced by the particular provisions of the Uniform Commercial Code, the principles of law and equity ... supplement its provisions.").

Minnesota law provides that waiver is "the 'intentional relinquishment of a known right.' " *In re Civil Commitment of Giem,* 742 N.W.2d 422, 432 (Minn. 2007) (quoting *Carlson v. Doran,* 252 Minn. 449, 456, 90 N.W.2d 323, 328 (1958)). "[I]t is the expression of an intention not to insist on what the law affords." *Carlson,* 252 Minn. at 456, 90 N.W.2d at 328. Waiver generally is a question of fact, and "[i]t is rarely to be inferred as a matter of law." *Farnum v. Peterson–Biddick Co.,* 182 Minn. 338, 341, 234 N.W. 646, 647 (1931); *see also Carlson,* 252 Minn. at 456, 90 N.W.2d at 328.

Waiver "is essentially unilateral and results as a legal consequence from some act or conduct of the party against whom it operates, without any act of the party in whose favor it is made being necessary to complete it." *Anderson,* 250 Minn. at 181, 84 N.W.2d at 603. Knowledge and intent are essential elements of waiver. *Stephenson v. Martin,* 259 N.W.2d 467, 470 (Minn.1977). But "[t]he requisite knowledge may be actual or constructive and the intent to waive may be inferred from conduct." *Alsleben v. Oliver Corp.,* 254 Minn. 197, 203, 94 N.W.2d 354, 358 (1959); *see also Stephenson,* 259 N.W.2d at 470. When a party acts in a way that is inconsistent with the terms of a contract, a fact finder can reasonably conclude that a party waived those contractual provisions. *See Stephenson,* 259 N.W.2d at 471 (holding that Workers' Compensation Court of Appeals properly concluded that insurer and employer had waived right to subrogation by entering into a settlement of disability claims without reserving right to claim subrogation); *Blazek v. North Am. Life & Cas. Co.,* 251 Minn. 130, 142, 87 N.W.2d 36, 45–46 (1957) (upholding jury's verdict that insurer had waived right to written notice of claim within 20 days after an accident based on insurer's conduct of making disability payment and accepting premium payment after it was aware of the accident).[4]

---

**3.** *See, e.g., Albany Roller Mills, Inc. v. N. United Feeds & Seeds,* 397 N.W.2d 430, 432–33 (Minn.App.1986) (holding that, under Minn. Stat. § 336.2–209(4), a party could agree to waiver of contract term requiring written modification of contract); *BMC Indus., Inc. v. Barth Indus., Inc.,* 160 F.3d 1322, 1332–33 & n. 17 (11th Cir.1998) (holding that under UCC 2–209(4), a party could waive requirement in contract that any modification be in writing and waive, through words and conduct, other requirements in the contract); *Exxon Corp. v. Crosby–Mississippi Res., Ltd.,* 40 F.3d 1474, 1490 (5th Cir.1995) (same); *Cassidy Podell Lynch, Inc. v. SnyderGeneral Corp.,* 944 F.2d 1131, 1147 n. 11 (3d Cir.1991) (same); *Wis.*

*Knife Works v. Nat'l Metal Crafters,* 781 F.2d 1280, 1286–87 (7th Cir.1986) (same); *J.W. Goodliffe & Son v. Odzer,* 283 Pa.Super. 148, 423 A.2d 1032, 1035 (1980) (same); *Gold Kist, Inc. v. Pillow,* 582 S.W.2d 77, 79 (Tenn. Ct.App.1979) (same); *Royster–Clark, Inc. v. Olsen's Mill, Inc.,* 290 Wis.2d 264, 714 N.W.2d 530, 535–36 (2006) (same).

**4.** There is a split of authority as to whether a party must show detrimental reliance, in addition to the intentional relinquishment of a known right, to establish waiver under UCC 2–209(4). *See, e.g., Wis. Knife Works,* 781 F.2d at 1286–87 (holding that detrimental reliance is necessary to show waiver under sec-

To avoid summary judgment, Gaylord's must present specific facts showing that there is a genuine issue of waiver for trial. Minn. R. Civ. P. 56.05; *see also DLH*, 566 N.W.2d at 71. Gaylord's does not point to any specific statements made by Valspar representatives that it intended to waive the written notice requirements of the contract. And Valspar's conduct does not create a genuine issue of material fact on the issue of waiver. It is true that Valspar employees met with Gaylord's representatives in an effort to correct the paint product problems. But cooperation between businesses to resolve product performance issues under a contract, without more, is insufficient to raise an issue of fact regarding waiver of express terms of an agreement.[5] In short, Valspar's attempts to satisfy its customer, without more, do not indicate an intention to surrender its rights under the contract that all modifications to the contract be in writing.[6] Even when viewed in a light most favorable to Gaylord's, a reasonable jury could not conclude that Valspar waived the contractual requirements that any written changes be in writing and that it receive written notice of any alleged default or breach of warranty. Thus, we conclude that summary judgment was properly entered for Valspar.

## II.

Gaylord's contends that it was error to dismiss its claim that Valspar fraudulently induced it to enter into the contract. It alleges that Valspar fraudulently represented that its paint product would apply evenly, match in color, and meet Valspar's product quality specifications.

To succeed on its fraud claim, Gaylord's must prove: (1) a false representation by Valspar of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made without knowing whether it was true or false; (3) with the intention to induce Gaylord's to act in reliance thereon; (4) that the representation caused Gaylord's to act in reliance thereon; and (5) that Gaylord's suffered pecuniary damages as a result of the reliance. *See Hoyt Properties, Inc. v. Prod. Res. Group, L.L.C.*, 736 N.W.2d 313, 318 (Minn.2007) (citation omitted).

Gaylord's fraud claim fails for two reasons. First, the false representation must be about a past or existing material fact susceptible of knowledge. We have stated:

It is a well-settled rule that a representation or expectation as to future acts is not a sufficient basis to support an action for fraud merely because the rep-

tion 2–209(4)). *But see BMC Indus., Inc.*, 160 F.3d at 1333 (holding that detrimental reliance is not necessary to show waiver under section 2–209(4)). But that issue is not before us and, therefore, we decline to reach it.

5. In fact, paragraph 7 of the contract, entitled "Technical Service and Support" expressly contemplates the conduct by Valspar that Gaylord's argues demonstrates waiver:

Seller will provide technical service and support as mutually agreed upon by the parties from time to time....

... Valspar Technicians will be on hand at Gaylord's to train Supervisors, Painters, Preppers and Mixers. This initial training will last a minimum of one week but Vals-

par will remain on site for as long as necessary. Painters and Supervisors will be trained to deliver high quality results.

6. Gaylord's argues that Valspar is equitably estopped from enforcing the six-month breach of warranty limitations period provided in the express warranty and that the limitations of remedies clause included in the express warranty fails as of its essential purpose. Because Gaylord's breach of warranty claim is barred due to insufficient notice, however, the issues of equitable estoppel and limitation of remedies are moot and we decline to reach them.

resented act or event did not take place. It is true that a misrepresentation of a present intention could amount to fraud. However, it must be made affirmatively to appear that the promisor had no intention to perform at the time the promise was made.

*Vandeputte v. Soderholm,* 298 Minn. 505, 508, 216 N.W.2d 144, 147 (1974).

The representations at issue here were made before the contract was executed. At that time, both parties were aware of problems with Valspar's paint product. The alleged false representations by Valspar were expressions of confidence that the paint application problems would be resolved, and thus were predictions of future results. Further, there is no evidence that Valspar had no intention of solving the paint application problems. For this reason, Gaylord's fraudulent misrepresentation claim fails as a matter of law.

■■■■ Second, Gaylord's cannot demonstrate that it reasonably relied on Valspar's representations that it would solve the paint application problems. Reliance in fraud cases is generally evaluated in the context of the aggrieved party's intelligence, experience, and opportunity to investigate the facts at issue. *Murphy v. Country House Inc.,* 307 Minn. 344, 351, 240 N.W.2d 507, 512 (1976); *Davis v. Re-Trac Mfg. Co.,* 276 Minn. 116, 118–19, 149 N.W.2d 37, 39–40 (1967). When a party conducts an independent factual investigation before it enters into a commercial transaction, that party cannot later claim that it reasonably relied on the alleged misrepresentation. *Davis,* 149 N.W.2d at 39–40 (citing *Lack Industries, Inc. v. Ralston Purina Co.,* 327 F.2d 266 (8th Cir. 1964)). Here, Valspar and Gaylord's were sophisticated business equals operating in a commercial setting, and Gaylord's conducted an investigation and experimentation regarding the quality and application

of Valspar's paint product to its truck-bed lids.

As a result, we conclude as a matter of law that Gaylord's is barred from asserting reasonable reliance on the alleged misrepresentation.

### III.

■■■ Gaylord's contends that Valspar negligently misrepresented its ability to supply paint product that would apply evenly and consistently to Gaylord's truck-bed lids, with no "fish-eye" or color-match problems, and that based on those representations Gaylord's entered into the contract.

■■■ We have recognized the common-law tort of negligent misrepresentation involving pecuniary loss as defined in Restatement (Second) of Torts § 552. *Florenzano v. Olson,* 387 N.W.2d 168, 174 & n. 3 (Minn.1986); *Bonhiver v. Graff,* 311 Minn. 111, 121–22, 248 N.W.2d 291, 298–99 (1976). Under section 552, a person makes a negligent misrepresentation when (1) in the course of his or her business, profession, or employment, or in a transaction in which he or she has a pecuniary interest, (2) the person supplies false information for the guidance of others in their business transactions, (3) another justifiably relies on the information, and (4) the person making the representation has failed to exercise reasonable care in obtaining or communicating the information. *Bonhiver,* 311 Minn. at 121–22, 248 N.W.2d at 298–99.

In Minn.Stat. § 604.101 (2008), the legislature limited a buyer's ability to bring a common-law claim against a seller based on a misrepresentation that relates to goods that have been sold. This statute was enacted in 2000 and, therefore, applies to this dispute. Act of Apr. 11, 2000, ch. 358, § 1, 2000 Minn. Laws 379. This court

has not yet addressed the impact that Minn.Stat. § 604.101 has on the common-law tort of negligent misrepresentation.[7]

This statute "applies to any claim by a buyer against a seller for ... a misrepresentation relating to the goods sold or leased." *Id.,* subd. 2. A "buyer" is defined as "a person who buys or leases or contracts to buy or lease the goods that are alleged to be ... the subject of a misrepresentation." *Id.,* subd. 1(b). A seller is defined as "a person who sells or leases or contracts to sell or lease the goods that are alleged to be ... the subject of a misrepresentation." *Id.,* subd. 1(f). And "goods" are "tangible personal property, regardless of whether that property is incorporated into or becomes a component of some different property."[8] *Id.,* subd. 1(c).

■ Section 604.101 contains an express limitation on a buyer's ability to bring a common-law misrepresentation claim against a seller. "A buyer *may not bring* a common law misrepresentation claim against a seller relating to the goods sold or leased unless the misrepresentation was made intentionally or recklessly." Minn.Stat. § 604.101, subd. 4 (2008) (emphasis added). " 'When the language of a statute is plain and unambiguous, it is assumed to manifest legislative intent and must be given effect.' " *Beardsley v. Garcia,* 753 N.W.2d 735, 737 (Minn.2008) (quoting *Burkstrand v. Burkstrand,* 632 N.W.2d 206, 210 (Minn.2001)); *see also Isles Wellness, Inc. v. Progressive N. Ins. Co.,* 703 N.W.2d 513, 521 (Minn.2005) (noting the legislature has the authority to abrogate the common law in a statute, but that it must be done "by express wording or necessary implication" (citation omitted) (internal quotes omitted)).

Gaylord's negligent misrepresentation claim falls within the scope of Minn.Stat. § 604.101. Valspar is a seller, Gaylord's is a buyer, and the paint product is a "good," as those terms are defined under the statute, and Gaylord's negligent misrepresentation claim relates to the goods sold. We conclude that under Minn.Stat. § 604.101, subd. 4, a buyer of goods is barred from bringing a common-law negligent misrepresentation claim against the seller that relates to the goods sold. Because a common-law negligent misrepresentation claim does not require a misrepresentation to be made intentionally or recklessly, such a claim is barred by the statute. *Florenzano,* 387 N.W.2d at 174.

**7.** Valspar argues that it was entitled to summary judgment on Gaylord's negligent misrepresentation claim because it did not owe a duty of reasonable care to Gaylord's. As support, Valspar cites *Safeco Insurance Co. of America v. Dain Bosworth, Inc.,* 531 N.W.2d 867, 873 (Minn.App.1995), *rev. denied* (Minn. July 20, 1995), where the court of appeals ruled that parties engaged in an arm's-length commercial transaction do not owe each other a duty of reasonable care, and thus negligent misrepresentation claims are not actionable under those circumstances. Because we conclude that Gaylord's claim for negligent misrepresentation is precluded by Minn.Stat. § 604.101, we do not decide whether a negligent misrepresentation claim can be brought when the alleged misrepresentation was made by one party to an arm's-length commercial transaction.

**8.** The limitation in Minn.Stat. § 604.101 on the types of tort claims that may be brought applies "regardless of whether article 2 or article 2A of the Uniform Commercial Code under chapter 336 govern[s] the sale or lease that caused the seller to be a seller and buyer to be a buyer." Minn.Stat. § 604.101, subd. 2(2). In addition, Minn.Stat. § 604.10 (2008), which addresses the recovery in tort for the economic loss from the sale of goods between parties who are merchants in goods of the kind, "does not apply to a claim governed by this section." Minn.Stat. § 604.101, subd. 6 (2008).

Summary judgment, therefore, was properly granted on Gaylord's negligent-misrepresentation claim.

Affirmed.